IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2007 JAN 26  P 8: 19

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| JOHN E. LANCASTER, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:06-cv-402-MEF |
| | ) | |
| PHILLIPS INVESTMENTS, LLC, | ) | |
| d/b/a THE CEDARS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT PHILLIPS INVESTMENTS, LLC'S MEMORANDUM BRIEF
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Phillips Investments, LLC, d/b/a the Cedars Apartments (hereafter referred to as "Phillips") and submit the following Memorandum Brief in Support of Motion for Summary Judgment.

**FACTS**

This is a premises liability case. The Plaintiff John E. Lancaster also asserts a claim under the Americans with Disabilities Act ("ADA").

Plaintiff is a 64 year old man who was living at the Cedars Apartments in Wetumpka, Alabama at the time of the fall that is the subject of the Plaintiff's Complaint. (Lancaster depo., p. 7, ln. 13-25; p. 10, lns. 7-16; p. 30, lns. 18-25) Plaintiff has been paralyzed (paraplegic) and been in a wheelchair since 1972 as a result of a logging accident. (Lancaster depo., p. 10, ln. 11 - p. 11, ln. 5) In the early 19902, Plaintiff also fell out of his wheelchair, fractured his right leg, and his right leg was amputated. (Lancaster depo., p. 11, lns. 6-25; p. 13, lns. 1-20)

On October 20, 2004, Plaintiff entered into a one year lease with Phillips for the lease of apartment 111 at the Cedars Apartments in Wetumpka. (Lancaster depo., p. 23, lns. 6-24; Lease, ex. 2 to Lancaster depo., ¶ 2) Prior to moving into the apartment, Plaintiff and his caregiver, Faye Mays, inspected the unit. (Mays depo., p. 17, lns. 1-17) The Cedars did not have any wheelchair ramps and Plaintiff was aware of this before he moved in. (Lancaster depo., p. 26, lns., 9-17; p. 33, lns 10-13; Mays depo., p. 9, lns, 16-23; p. 10, lns. 7-11; p. 17, lns. 18-25) Plaintiff did not ask for an apartment that was handicap accessible, and he was told that the apartment was not handicap accessible. (Mays depo., p. 18, lns. 11-16; Summers depo., p. 18, lns. 19-21; p. 19, lns. 6-8; p. 42, lns. 11-24)

Later, Plaintiff's sister, Marie Smilie, later asked the apartment manager, Judy Summers, if the Cedars could install a ramp at the back entrance of the Plaintiff's apartment. (Smilie depo., p. 15, lns. 8-17; p. 16, lns. 22 - p. 17, ln.14; Summers depo., p. 22, lns. 21-25; p. 23, lns. 1-8; Mays depo., p. 26, ln. 5 - p. 27, ln. 23; Phillips depo., p. 12, lns. 23-25; p. 13, lns. 25) The Cedars contacted Don Blakenship, who was doing handyman type work, and made arrangements for him to build a ramp for the Plaintiff. (Phillips depo., p. 13, lns. 16-25) The Cedars did not give Blakenship any instructions on how to build the ramp. (Phillips depo., p. 14, lns. 6-12) Blakenship spoke to Plaintiff prior to building the ramp, and Plaintiff told him where to build the ramp. (Lancaster depo., p. 31, lns. 9-25; p. 33, lns 14-17; Mays depo., p. 30, lns. 2-22) The ramp was built at the location selected by the Plaintiff. (Lancaster depo., p. 31, lns. 21-23) After speaking with Blankenship, Plaintiff and his caregiver left on an errand. (Mays depo., p. 30, lns. 6-11)

The ramp was made out of wood and descended from the Plaintiff's back patio to the gravel parking lot behind Plaintiff's apartment. (Lancaster depo., p. 34, lns. 9-25; see pictures of ramp, ex.

2

3, to Lancaster depo.; Lancaster depo., p. 36, lns. 2-4; p 43, lns.22-25; p. 44, lns. 1-10) The ramp was built only for the Plaintiff, and entered the gravel parking lot between two parking spaces that were assigned to the Plaintiff. (Lancaster depo., p. 35, lns. 4-25; p. 36, lns. 1-4; Mays depo., p. 21, lns. 18-20; ex. 3 to Lancaster depo.; Mays depo., p. 10, ln. 22 - p. 12, ln. 5, p. 47, lns. 17-22, p. 64, lns. 16-21) ) Plaintiff's van and his caregiver's car parked in these two spaces that were assigned to the Plaintiff. (Lancaster depo., p. 35, lns. 4-23; Mays depo., p. 11, lns. 3-25; p. 12, lns. 1-5; Mays depo., p. 21, lns. 10-20)

When the Plaintiff and his caregiver returned, they saw the wooden ramp, but thought that it was not finished because it had no concrete or handrails. Mays depo., p. 32, lns 22-25; p. 33, ln. 1 - p. 35, lns 2)  When the Plaintiff saw the ramp for the first time he thought that "it didn't look right." (Lancaster depo., p. 36, lns. 5-14; p. 37, lns. 2-5) The Plaintiff did not like the fact that the ramp had no handrails. (Lancaster depo., p. 37, lns. 2-7; Mays depo., p. 48, ln. 25 - p. 49, lns. 1-25) Plaintiff also did not like the ramp because at the base of the ramp, there was a 3-4 inch drop to the gravel parking lot, and it did not have concrete or plywood leading at the base of the ramp to the parking lot that would allow the Plaintiff to make a smooth transition from the ramp to the gravel parking lot. (Lancaster depo., p. 37, lns. 7-25; p. 38, lns. 1-6; p. 40, lns. 20-25; p. 41, lns. 1-9) Plaintiff and his caregiver discussed the fact that the ramp needed to have some cement at the base so it would come off on a flat surface. (Mays depo., p. 42, lns. 21-25; p. 43, lns. 1-25; p. 44, lns. 1-25; p. 45, lns. 1 - 19; p. 48, lns. 19-24) Before his accident, Plaintiff knew that using the ramp could be dangerous. (Lancaster depo., p. 39, lns. 22-25; p. 41, lns. 17-25; p. 42, lns. 1-12)  Neither the Plaintiff nor anyone on his behalf complained to the Cedars about the ramp before his accident. (Lancaster depo., p. 42, lns. 16-22; Mays depo., p. 36, ln. 23 - p. 37, ln. 11; p. 50, lns. 1-10)

3

About a week after the ramp was built, on April 7, 2005, Plaintiff's caregiver suggested that he try the ramp. (Mays depo., p. 35, lns. 3-14; p. 57, lns. 19-25; p. 58, ln. 7 - p. 59, ln. 1)  A day or two before the Plaintiff's accident, it had rained.  (Lancaster depo., p. 43, lns. 16-19)  Plaintiff testified the water would "just stand back there" in the parking lot after it rained. (Id.)  Plaintiff also testified that it would be muddy and wet in the parking lot after it rained and that he knew this before his accident. (Lancaster depo., p. 44, lns. 6-25) On the day of his accident, Plaintiff and his caregiver were on his back patio and he observed that the parking lot was muddy and wet.  (Lancaster depo., p. 45, lns. 1-25; Mays depo., p. 35, lns. 13-22) You could also observe that there was mud down at the base of the ramp as well.  (Mays depo., p. 51, lns. 10-23)  The Plaintiff decided to go down the ramp by himself while his caregiver was getting his van. (Lancaster depo, p. 45, lns. 18-25; p. 46, lns. 6-9)  Plaintiff went slowly down the ramp without trouble.  (Lancaster depo., p. 46, lns. 22-25; p. 54, lns. 10-12) Plaintiff also testified that he had his hands on the wheels of the wheelchair the entire time to control his speed so the lack of handrails on the ramp did not contribute to his accident. (Lancaster depo., p. 47, lns. 1-25; p. 48, lns. 1-14)  Plaintiff claims that when he came to the bottom of the ramp, the wheels went off the end of the ramp, he tilted over and fell injuring his left leg. (Lancaster depo., p. 47, lns. 10-14; p. 49, lns. 2-5) Plaintiff attributes his fall to the fact that there was a 3 or 4 inch drop at the base of the ramp leading to the parking lot. (Lancaster depo., p. 54, lns. 13-19) Plaintiff claims there should have been concrete or plywood at the base of the ramp.  (Lancaster depo., p. 49, lns. 21-23)

As a result of the accident, Plaintiff fractured his right leg, but since he was a paraplegic he did not know it was broken until he went to the doctor the following Monday. (Lancaster depo., p. 49, lns. 4-5; Mays depo., p. 56, lns. 10-24; p. 57, lns. 1-18; p. 58, lns 1-22; p. 59, lns. 1-20)

4

Because Plaintiff's bones were so fragile due to preexisting medical conditions, the fracture did not heal and in August of 2005, the leg had to be amputated. (Mays depo., p. 61, lns. 2-20)

The ramp had been in place for about a week prior to the Plaintiff's accident. (Lancaster depo., p. 30, lns. 17-25; p. 31, lns. 1-4) Plaintiff used the ramp several more times after his fall, without incident, with his caregiver pushing him up and down the ramp. (Lancaster depo., p. 28, lns. 13-22; Mays depo., p. 40, lns. 16-25)

There are a total of 20 apartment units at the Cedars. (Summers depo., p. 26, lns. 6-13) There is also a gravel parking lot. (Mays depo., p. 21, ln. 18-p. 22, ln. 1) There is no leasing office at the Cedars. (Summers depo., p. 25, lns. 23-25; Mays depo., p. 21, ln. 24 - p. 22, ln. 3) The parking lot is only for the use of the tenants at the Cedars. (Mays depo., p. 22, lns. 4-6) The ramp served only the Plaintiff and led to the two parking spaces that were assigned to the Plaintiff. (Lancaster depo., p. 35, lns. 4-25; p. 36, lns. 1-4; Mays depo., p. 21, lns. 18-20; ex. 3 to Lancaster depo.; Mays depo., p. 10, ln. 22 - p. 12, ln. 5) Phillips owns the Cedars, and the sole owner of Phillips is Mickey Phillips. (Phillips depo., p. 7, lns. 4-16) Mr. Phillips' wife, Ann Phillips, handles the bill paying for the apartments, and her mother, Judy Summers, is the apartment manager. (Summers depo., p. 8, lns. 14-23; Phillips depo., p. 7, lns. 17-25; p. 8, lns. 1-6; p. 20, lns. 2-3; Mays depo., p. 16, lns. 15-25, p. 17, ln. 1) When Phillips bought the Cedars they were already built and in existence. (Phillips depo., p. 10, lns. 23-25)

5

## ARGUMENT

**A.     The premises are not subject to ADA compliance.**

In Count III of the Complaint, Plaintiff claims that the "Defendant failed to comply with the terms of the ADA in and about the design, construction, and maintenance of both the premises and the ramp." (Complaint, p. 2, Count III) Plaintiff appears to assert a claim under Title III of the ADA. Plaintiff's ADA claim is due to be dismissed, however, because the premises are not subject to the ADA.

To state a claim under the ADA, the plaintiff must show (1) that he is a qualified individual with a disability; (2) that the defendant is covered by the ADA; and (3) that the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant by reason of the disability. *Henrietta D. v. Bloomberg,* 331 F.3d 261, 288 (2nd Cir. 2003). Under Title III of the ADA, discrimination is prohibited against any individual on the basis of disability "by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C § 12182. Under Section 12181(7)(A), this includes an inn, hotel, motel, or other place of lodging, **but does not include residential facilities.** *Independent Housing Services of San Francisco v. Fillmore Center Associates,* 840 F.Supp. 1328, 1344 n. 14 (N.D.Ca. 1993). In *Independent Housing Services,* the court held that apartments and condominiums do not constitute public accommodations with the meaning of the ADA. *Id.* at 1344; *see also Regents of the Mercersburg College v. Republic Franklin Ins. Co.,* 458 F.3d 159, 166 n. 8 (3rd Cir. 2006)("We agree that residential facilities such as

6

apartments and condominiums are not transient lodging and, therefore, not subject to ADA compliance").

It is undisputed that Plaintiff's ADA claim concerns a residential facility, the Cedars, that consists only of 20 residential units. (Summers depo., p. 26, lns. 6-13; p. 25, lns. 23-25) The ramp was built only for the Plaintiff and leads from his patio to the two parking spaces that were assigned to him. (Lancaster depo., p. 35, lns. 4-25; p. 36, lns. 1-4; Mays depo., p. 21, lns. 18-20; ex. 3 to Lancaster depo; Mays depo., p. 10, ln. 22 - p. 21, ln. 24 - p. 22, ln. 3) Plaintiff's ADA claim does not concern a place of public accommodation, and is therefore due to be dismissed.

**B.    Plaintiff's state law claims are bared by Contributory Negligence and Assumption of the Risk.**

To establish contributory negligence, the defendant must demonstrate that 1) the plaintiff had knowledge of the dangerous condition; 2) an appreciation of the danger under the surrounding circumstances; and 3) that plaintiff failed to exercise reasonable care by placing himself in the way of danger. *Serio v. Merrell, Inc.*, 941 So. 2d 960, 964 (Ala. 2006). "[I]f the facts are such that all reasonable people would logically to have to reach the conclusion that the plaintiff was contributorily negligent, then contributory negligence may be found as a matter of law." *Id., citing Knight v. Seale*, 530 So. 2d 821, 824 (Ala. 1988); *Knight v. Alabama Power Co.,* 580 So. 2d 576 (Ala. 1991); *Ex parte Mountain Top Indoor Flea Market, Inc.,* 699 So. 2d 158 (Ala. 1997); *Ridgeway v. CSX Transp., Inc.,* 723 So. 2d 600 (Ala. 1998); *Sutton v. Mitchell Co.,* 534 So. 2d 289 (Ala. 1988).

This rule applies in this case. Plaintiff testified that before he fell, he did not like the looks of the ramp because it had no handrails and it had a 3-4 inch drop off from the base to the parking lot. (Lancaster depo., p. 36, lns. 5-14; p. 37, lns. 2-25; p. 38, lns. 1-6; p. 40, lns. 20-25; p. 41, lns.

1-9) Plaintiff also testified that before he used the ramp, he thought it needed concrete or plywood at the base to allow him to have a smooth transition into the parking lot. (Lancaster depo., p. Id.; Mays depo., p. 42, lns. 21-25; p. 43, lns. 1-25; p. 44, lns. 1-25; p. 45, lns. 1-19; p. 48, lns. 19-24) When asked why the 3-4 inch gap at the base was a problem for him, Plaintiff testified: "You run off that steep a place in a wheelchair and see what happens to you." (Lancaster depo., p. 39, lns. 2-15) Plaintiff also testified that he knew that the ramp could be dangerous if he used it, but he used the ramp anyway. (Lancaster depo., p. 39, lns. 22-25; p. 41, lns. 17-25, p. 42, lns. 1-12)

Plaintiff's testimony establishes that he was aware of the dangerous condition of the ramp, that he appreciated the dangerous condition of the ramp, and that he failed to use reasonable care by using the ramp anyway. Plaintiff's state law claim for negligence should therefore be dismissed.

It is also undisputed that Plaintiff assumed the risk of injury. The affirmative defense of assumption of risk requires: 1) that plaintiff have knowledge and an appreciation of the danger he is incurring; and 2) that plaintiff voluntarily consents to bear that risk. *McKerley v. Etowah-DeKalb-Cherokee Mental Health Bd., Inc.*, 686 So. 2d 1194 (Ala. Civ. App. 1996). If there is no genuine issue of material fact, then whether the plaintiff has assumed the risk is a question of law for the court. *Barran v. Kappa Alpha Order, Inc.*, 730 So. 2d 203 (Ala. 1998).

As noted above, Plaintiff testified that he did not like the looks of the ramp, that he knew it had no handrails, that he knew that it had a 3-4 inch gap at the bottom that would not allow for a smooth transition into the parking lot, and that he knew that using the ramp could be dangerous. Plaintiff voluntarily consented to bear the risk by using ramp anyway on the day of his fall. The undisputed evidence supports a finding that Plaintiff assumed the risk of injury. Plaintiff's state law claims should therefore be dismissed as a matter of law.

C.    **The condition of the ramp was open and obvious.**

A landowner has no duty to warn an invitee of open and obvious defects in the premises, of which the invitee is aware or should be aware through the exercise of reasonable care. *Browder v. Food Giant, Inc.*, 854 So. 2d 594 (Ala.Civ.App. 2002). "The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable." *Harvell v. Johnson*, 598 So. 2d 881, 883 (Ala. 1992), *quoting, Breeden v. Hardy Corp.*, 562 So. 2d 159 (Ala. 1990); *see also, Marquis v. Marquis*, 480 So. 2d 1213, 1215 (Ala. 1985)("Whether we speak in terms of the duty owed by the defendant or of contributory negligence of the plaintiff, the plaintiff cannot recover for negligence or wantonness if the plaintiff's injury was caused by an open and obvious danger of which the plaintiff knew, or should have been aware)    The court uses an objective standard to assess whether a hazard is open and obvious. *Jones Food Co., Inc. v. Shipman*, Docket No. 1051322 at *8 (Ala. Dec. 15, 2006). The question is whether the danger should have been observed, not whether in fact it was consciously appreciated. *Id.* The court went on to hold in *Jones Food Co.* that a reasonable person should have perceived the risk that a ladder leaning against the facade of a restaurant at a 45 degree angle could shift at the bottom if it was not secured. *Id.* at *9. The attendant risk of the ladder was thus open and obvious and the plaintiff's claims were due to be dismissed. *Id.*

In the present case, Plaintiff admitted he was aware that the ramp had no handrails, that it had a 3-4 inch gap at the bottom that would not allow for a smooth transition into the parking lot, and that it could be dangerous. (Lancaster depo., p. 36, lns. 5-14; p. 37, lns. 2-25; p. 38, lns. 1-6; p. 40, lns. 20-25; p. 41, lns. 1-9) He also knew that it had rained and that the parking lot was wet and

9

muddy from the rain. (Lancaster depo., p. 44, lns. 6-25; p. 45, lns. 1-25; Mays depo., p. 51, lns. 10-23) His caregiver testified that they could see that it was wet and muddy at the end of the ramp while they were on the patio. (Mays depo., p. 51, lns. 10-23) A reasonable person should have perceived the risk of using the ramp under the circumstances; i.e., it was an open and obvious condition. Plaintiff's state law claims for negligence and wantonness should therefore be dismissed. *See also, Hartzog v. Compass Bank,* 686 So. 2d 323 (Ala. Civ. App. 1996); *Hines v. Hardy,* 567 So. 2d 1283 (Ala. 1990); *Douglas v. Devonshire Apartments, LLC,* 833 So. 2d 72 (Ala.Civ.App. 2002); *Prince v. Wal-Mart Stores, Inc.,* 804 So. 2d 1102 (Ala.Civ.App. 2001);*Harvell v. Johnson,* 598 So. 2d 881 (Ala. 1991); *Curvin v. Pinyan,* 717 So. 2d 435 (Ala. Civ. App. 1998); *Ex parte Goldkist, Inc.,* 686 So. 2d 260, 261-62 (Ala. 1996). This Court should therefore enter summary judgment in favor of Phillips with respect to Plaintiff's claims for negligence and wantonness.

### D.    There is no evidence of Wantonness.

Wantonness is the conscious doing of an act or the omission of a duty by one who has knowledge of the existing conditions, and who is conscious that from the doing of such act or omission of such duty injury will likely or probably result. *Serio,* 941 So. 2d at 966-67. Before a party can be said to be guilty of wanton conduct, it must be shown that, with reckless indifference to the consequences, he consciously and intentionally did some wrongful act or omitted some known duty that produced the injury. *Ridgeway,* 723 So. 2d at 608.

Plaintiff never complained to the Cedars that the ramp was dangerous or that he had a problem with the ramp. (Lancaster depo., p. 42, lns. 16-22; Mays depo., p. 36, ln. 23 - p. 37, ln. 11; p. 50, lns. 1-10) Plaintiff cannot present any evidence that Phillips knew the ramp was dangerous and that with reckless indifference to the consequences, failed to take action. There is simply no

10

evidence of wanton conduct, and Plaintiff's claim should be dismissed. *See, e.g., Johnson v. Investment Co. of the South,* 869 So. 2d 1156, 1167 (Ala.Civ.App. 2003)(insufficient evidence that defendants had knowledge of dangerous condition or that they acted with reckless disregard for plaintiff's safety); *Kennemer v. Republic Parking Systems, Inc.,* 779 So. 2d 239, 242 (Ala.Civ.App. 2000)(summary judgment proper where plaintiff failed to present substantial evidence that defendant acted or failed to act with knowledge and consciousness that its act or failure to act would likely result in injury to plaintiff); *Hartzog v. Compass Bank,* 686 So. 2d 325, 327 (Ala.Civ.App. 1996)(summary judgment in slip and fall case where there was insufficient evidence of wantonness).


Thomas T. Gallion, III (ASB-5295-L74T)
Constance C. Walker  (ASB-5510-L66C)
Attorneys for Defendant Phillips Investments, LLC
d/b/a the Cedars


**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & GALLION, L.L.C.**
305 South Lawrence Street
Post Office Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573
(334) 264-7945 Fax

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon the

following counsel of record by placing a copy of the same in the United States mail, postage prepaid,

this the _____ day of January, 2007.

**Counsel for Plaintiffs**
Coleman Yarbrough
Office of D. Coleman Yarbrough
2860 Zelda Road
Montgomery, Alabama 36106
(334) 277-9559
(33) 277-9035 (fax)
dcyarbrough@knology.net

OF COUNSEL

12