# Condensed Transcript

# Deposition of
# Judith Ann Summers

taken on
January 10, 2007

John E. Lancaster
v.
Phillips Investments, LLC, d/b/a The Cedars

Case No. CV-02-T-767-N



**Certified Court Reporters and Certified Legal Video Specialists**
334.262.3332  1.888.253.DEPS
Email: depo@baker-baker.com
www.baker-baker.com

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN E. LANCASTER,
      Plaintiff,
vs.                CASE NO. CV-02-T-767-N
PHILLIPS INVESTMENTS, L.L.C.,
d/b/a THE CEDARS,

      Defendant.

* * * * * * * *

The deposition of JUDITH ANN SUMMERS was taken before Cornelia J. Baker, Certified Court Reporter and Certified Shorthand Reporter, as Commissioner, on Wednesday, January 10, 2007, commencing at approximately 1:59 p.m., at the law offices of Haskell, Slaughter, Young and Gallion, L.L.C., 305 South Union Street, Montgomery, Alabama, pursuant to the stipulations set forth herein.

* * * * * * * *

**Page 2**

* * * * * * *
          APPEARANCES

Representing the Plaintiff:
    MRS. CONSTANCE C. WALKER
    Attorney at Law
    Haskell, Slaughter, Young &
      Gallion, L.L.C.
    305 South Lawrence Street
    Montgomery, Alabama 36104

Representing the Defendant:
    MR. D. COLEMAN YARBROUGH
    Attorney at Law
    2860 Zelda Road
    Montgomery, Alabama 36106

**Page 3**

* * * * * * * *

          STIPULATIONS

It is hereby stipulated and agreed by and between counsel representing the parties that the deposition of JUDITH ANN SUMMERS is taken pursuant to the Rules of Civil Procedure, and that said deposition may be taken before Cornelia J. Baker, Certified Court Reporter, as Commissioner, without the formality of a commission; that objections to questions, other than objections as to the form of the questions, need not be made at this time, but may be reserved for a ruling at such time as the deposition may be offered into evidence, or used for any other purpose by either party hereto, provided by the Statute.

It is further stipulated and agreed by and between counsel representing the parties in this case, that the filing of the deposition of JUDITH ANN SUMMERS is hereby waived, and that said deposition

**Page 4**

may be introduced at the trial of this case or used in any other manner by either party hereto provided for by the Statute, regardless of the waiving of the filing of same.

It is further stipulated and agreed by and between counsel and the witness that the reading and signing of the deposition by the witness is hereby waived.

* * * * * * *

          I N D E X

EXAMINATION                    PAGE
BY MR. YARBROUGH:                 5
BY MRS. WALKER:                  42

EXHIBIT                        PAGE
Plaintiff's Exhibit No. 1 .......... 8
    Notice of Deposition

Pages 1 to 4

334.262.3332        Baker & Baker Reporting and Video Services, Inc.        334.262.3332
888.253.3377        Certified Court Reporters and Certified Legal Video Specialists        888.253.3377

Page 5

1    JUDITH ANN SUMMERS,
2  The Witness, having first been sworn or
3  affirmed to speak the truth, the whole
4    truth, and nothing but the truth,
5         testified as follows:
6           EXAMINATION
7  BY MR. YARBROUGH:
8  Q. Mrs. Summers, we met just a few minutes
9     ago, but again, my name is Coleman
10    Yarbrough, and I represent the Plaintiff,
11    John Lancaster, in these proceedings. I'm
12    going to ask you a series of questions
13    now, and the Court Reporter is going to
14    take down those questions and your
15    responses.
16       It's important that you and I
17    understand one other. I want to be sure
18    you understand me, and I want to be sure
19    that I understand you. So if I ask you a
20    question that you don't understand, can I
21    count on you to tell me that you don't
22    understand it?
23 A. I sure will.
24 Q. And if you need anything repeated, can I
25    count on you to ask me to repeat it?

Page 6

1  A. Yes.
2  Q. Now, this is not an inquisition. I don't
3     think it's going to last a long time, but
4     if you need a break, want to use the
5     restroom, get another soft drink or
6     whatever, you just let us know and we'll
7     adjourn for the appropriate period of
8     time, okay?
9  A. Yes, sir.
10 Q. Now, it's also important that you answer
11    orally as opposed to nodding or shaking of
12    the head.
13 A. Yes. I understand.
14 Q. Have you given depositions before?
15 A. Once.
16 Q. Have you been involved in any other
17    lawsuits other than the one in which you
18    gave your deposition?
19 A. Say that again. I mean, I did just one
20    before this.
21 Q. Right.
22 A. Is that what you mean?
23 Q. Yes. That was for a particular lawsuit?
24 A. Yes.
25 Q. What kind of case was that?

Page 7

1  A. It was a personal case between my husband,
2     myself, my son, and my daughter-in-law.
3     We had purchased a home two years ago.
4     And they sold us the home, and a month
5     after we closed, we found out there was no
6     sewer and no septic tank there.
7  Q. Wow.
8  A. Right. That's all.
9  Q. Is that the only -- and so you brought a
10    lawsuit, I take it, against the folks that
11    sold you the home?
12 A. Well, we did to the people that sold us
13    the home and to the real estate and . . .
14 Q. Right. And I'm not interested in the
15    details of that.
16 A. Right.
17 Q. But that was a couple of years ago or
18    roughly?
19 A. I'm -- I think it was -- we brought the
20    suit in 2004, I think.
21 Q. Close enough. Was that in Montgomery?
22 A. Yes, sir.
23 Q. Who was your lawyer?
24 A. Mike Cohan from Hill, Hill, and Carter.
25 Q. Have you been either a plaintiff or a

Page 8

1     defendant in any other lawsuits?
2  A. No.
3  Q. This deposition is being taken pursuant to
4     a notice, and that is a copy of the
5     notice. And I want to ask you a few
6     questions about that and your contacts.
7        (Whereupon Plaintiff's Exhibit
8         No. 1 was marked for
9         identification and attached
10        hereto.)
11       (Witness reviewed document.)
12 Q. And while you're sort of looking that
13    over, let me just get a little bit more
14    background. You're an employee of
15    Phillips Investments?
16 A. Yes, sir.
17 Q. What is your capacity there?
18 A. I'm the manager of the apartments.
19 Q. Cedar . . .
20 A. The Cedars apartments.
21 Q. How long have you been managing
22    The Cedars?
23 A. Since 2000 -- I can't remember. Right
24    after they purchased it. Whenever they
25    purchased it. 2002, maybe. I'm guessing.

Pages 5 to 8

334.262.3332            Baker & Baker Reporting and Video Services, Inc.            334.262.3332
888.253.3377     Certified Court Reporters and Certified Legal Video Specialists    888.253.3377

Judith Ann Summers
January 10, 2007

**Page 9**

1  Q. Okay. What did you do before that?
2  A. I'm a hairdresser.
3  Q. Is this the first employment you've had in
4     the real estate industry?
5  A. Yes, sir.
6  Q. Did you get any training for that
7     position?
8  A. Yes, sir.
9  Q. What kind of training did you get?
10 A. A manager that had managed -- well, is
11    managing five other apartments in
12    Montgomery, Prattville, and, I think,
13    Pintlala. I don't know. They had five
14    apartment complexes. And she trained me.
15 Q. How did she do that?
16 A. Well, she showed me how I'd do a lease.
17    She showed me how I would show an
18    apartment. Mainly just the duties that I
19    do now.
20 Q. Oh, on-the-job training?
21 A. Yeah. She came there and showed me
22    everything. And she introduced me,
23    because she was helping the Phillips out.
24    And she took me door to door and
25    introduced me to everyone. And then she

**Page 10**

1     showed me how I did the deposits and just
2     mainly what all I do now.
3  Q. How long did that take?
4  A. Well, she did it with me for a couple of
5     months. But then anytime I had a
6     question, I could call her at any time.
7  Q. Is she a Phillips' employee?
8  A. Not now.
9  Q. Was she then?
10 A. Yes, sir.
11 Q. What was her name?
12 A. Jacqueline Dobbs, D-O-B-B-S. But I don't
13    think her -- she was married before, and
14    she was a Miller then.
15 Q. Jacqueline Miller?
16 A. I believe. I think. I don't remember.
17 Q. One of the things we need to talk about
18    today are any contracts or agreements
19    between the parties, that is between
20    Mr. Lancaster and Phillips. Are you the
21    person that's probably most knowledge
22    about that?
23        MRS. WALKER: About what? I'm
24        sorry.
25        MR. YARBROUGH: Contracts

**Page 11**

1     between the parties.
2  A. Yes, sir.
3  Q. And the negotiations for those contracts?
4  A. Yes, sir.
5  Q. And communications between Phillips and
6     Mr. Lancaster --
7  A. Yes.
8  Q. -- or anybody acting or reportedly acted
9     on his behalf?
10 A. Yes.
11        MRS. WALKER: And Ann. Ann had
12        some conversations, too,
13        the other lady that's here.
14 Q. All right. And conversations about the
15    wheelchair ramp, are you the person most
16    knowledgeable about that?
17 A. Well, Ann and I. Mostly, I guess, she
18    contacted me, Ms. Smilie.
19 Q. Well, with that said, let's see if we
20    can't get into this and out of it. When
21    did you first speak with either
22    Mr. Lancaster or anyone that you
23    understood was acting for him or on his
24    behalf?
25 A. To rent the apartment?

**Page 12**

1  Q. Yes, ma'am. Well, I guess it would be to
2     rent the apartment, but the first contact
3     you ever had?
4  A. If you want the dates, I don't remember
5     the dates.
6        MRS. WALKER: That's all right.
7        Just tell him what you --
8  A. I don't know the dates. They called me.
9  Q. Let's get at it this way: Do you have a
10    copy of the lease?
11 A. Yes.
12 Q. And it should be dated.
13 A. Right. It was --
14 Q. Let's just look at the lease and see when
15    it's dated?
16 A. Okay. It's dated the 31st of September,
17    2004.
18        MRS. WALKER: No.
19 A. I mean, 20th of October, 2004. I'm
20    sorry.
21 Q. So you talked to them, somebody, obviously
22    prior to that time?
23 A. Right.
24 Q. And do you remember --
25 A. Okay. Do you want me to just tell you the

Judith Ann Summers
January 10, 2007

**Page 13**

```
 1   story or do you want me --
 2          MRS. WALKER: No. Let him ask
 3      you a question.
 4   Q. Approximately, how long before the lease
 5      was entered into did you have the first
 6      contact with Mr. Lancaster or someone for
 7      him?
 8   A. Approximately, three months before this
 9      was made.
10   Q. Okay. And what was the substance of that
11      contact?
12   A. They wanted to rent an apartment without
13      any steps.
14   Q. With whom did you speak?
15   A. Mrs. Faye.
16   Q. Faye Mays?
17   A. I don't know what her last name is. All I
18      know is Mrs. Faye. That was John's
19      caregiver.
20   Q. All right. And she said they wanted an
21      apartment without any steps?
22   A. Right.
23   Q. And what was your response?
24   A. I told her we didn't have any apartments
25      without any steps. The ones that were
```

**Page 14**

```
 1      without any steps were all filled.
 2   Q. What happened then?
 3   A. She called me every couple of weeks, and I
 4      would tell her that I didn't have any --
 5      and I would tell her again I didn't have
 6      any. And then when one came available --
 7      when she called me, I told her I had one
 8      that was available without any steps. And
 9      they came and looked at it.
10   Q. And what apartment was that?
11   A. 111.
12   Q. Does 111, in fact, not have any steps?
13   A. It doesn't have any steps inside the
14      apartment.
15   Q. It has steps in and out, but no interior
16      steps; is that correct?
17   A. Well, the one on the outside isn't
18      considered a step. It's just about this
19      deep. I don't know how to measure that.
20      3 inches? It's a step-down off the patio,
21      that's all.
22   Q. In front?
23   A. In the back.
24   Q. In the back?
25   A. Yes, sir.
```

**Page 15**

```
 1   Q. Are we talking about the side away from
 2      the street or the side facing the street?
 3   A. If you come out the back door of the
 4      apartment, there's no street back there.
 5      It's just into the parking lot.
 6   Q. Right. And if you come out that back
 7      door, there are no steps, you're at ground
 8      level?
 9   A. Yes, sir. Well, it comes out onto the
10      patio.
11   Q. All right. And then what?
12   A. And then the patio is about this high up,
13      is however thick a hunk of concrete is,
14      and then there's the dirt.
15   Q. So you had several conversations with
16      Faye -- I'm going to tell you her name is
17      Faye Mays just so we can identify her;
18      that's not controversial -- I think, about
19      finding an apartment that didn't have any
20      steps inside. And finally you had one
21      come available, and they came and looked
22      at it?
23   A. Yes, sir.
24   Q. Is that a fair summary of what happened
25      before they came and looked at it?
```

**Page 16**

```
 1   A. Yes, sir.
 2   Q. And what happened when they came and
 3      looked at it? Tell me about that visit,
 4      please.
 5   A. It's hard to remember. They pulled up in
 6      the front of the apartment. I opened the
 7      front door, because she told me he was in
 8      a wheelchair. So I brought him in the
 9      front, because it's -- you come up a
10      sidewalk right into the apartment. Well,
11      you come up a sidewalk and then you go in
12      a hall that's concrete, all flat, right
13      into the apartment. And they looked at
14      the apartment.
15   Q. All right. But now, somewhere along that
16      line, there's a -- whether you call it a
17      step or not, there's a step up or down, is
18      there not, coming in the front?
19   A. It's not a step, it's just a threshold.
20      It's like this. (Witness motioned with
21      hand.) I don't -- I don't know how to
22      explain it to you. I don't --
23   Q. Nothing more than a threshold?
24   A. Pardon me?
25   Q. Nothing more than a threshold in the
```

Pages 13 to 16

334.262.3332
888.253.3377
Baker & Baker Reporting and Video Services, Inc.
Certified Court Reporters and Certified Legal Video Specialists
334.262.3332
888.253.3377

Judith Ann Summers
January 10, 2007

**17**

1  front?
2  A. No.
3  Q. Correct?
4  A. Correct.
5  Q. All right. And they came in that way?
6  A. They came in that way. I'm not positive,
7    but I'm pretty sure that's the way they
8    came in the first time. Then they came
9    out to the back and looked at the patio,
10   yes. And then they went back in. And
11   then, when they left, they went out the
12   front.
13 Q. Did they come back and look any more
14   before this lease was signed?
15 A. No. They called me.
16 Q. Who called?
17 A. Faye. I never spoke to John except in
18   person the day he looked at the apartment.
19 Q. Okay.
20 A. And he never said probably three words to
21   me --
22 Q. And -- go ahead. I'm sorry I interrupted
23   you.
24 A. Then she called and said they would like
25   to take the apartment. And I said, Okay.

**18**

1  And they filled out an application, and
2  they paid their deposit.
3  Q. Was that done on premises or did you mail
4    them an application or where did that take
5    place?
6  A. The day that they came and looked at it,
7    they took an application. And when
8    they --
9  Q. So they filled it out and brought the
10   application back to you?
11 A. Yes. The day she called for me to meet
12   them there. And they filled out the lease
13   that day. I filled out the lease, and
14   they signed it -- he did.
15 Q. Was there any conversation about a
16   wheelchair ramp or any difficulty in
17   accessing the premises either from the
18   front or back?
19 A. No. The only thing is -- I told them that
20   it was not a handicap accessible
21   apartment. And I said, If you're going to
22   put up a grab bar in the bathroom, you
23   will have to leave it, because it will
24   make a hole in the Formica. She says, We
25   don't need any of that, because he doesn't

**19**

1  get in the bathtub; he gets a bed bath. I
2  said, Okay.
3  Q. So when you said it was not handicap
4    accessible, you had reference only to the
5    bath facilities?
6  A. No. The whole apartment complex was not
7    handicap accessible. I explained that to
8    them.
9  Q. Okay. Why did you explain that to them?
10 A. Because I knew he was in a wheelchair.
11 Q. And what other access -- what other
12   handicap access was denied other than the
13   grab bar in the bathroom?
14     MRS. WALKER: Object to the
15       form.
16     THE WITNESS: I don't understand
17       what he's asking me.
18 Q. Well, you said there were other -- it was
19   not handicap accessible in other ways than
20   the grab bar. What other ways?
21 A. All I said was it was not a handicap
22   accessible apartment.
23 Q. All right. And how did you know that?
24 A. That there was no grab bar in the
25   bathroom.

**20**

1  Q. All right. Is that the only thing that,
2    in your mind, made it nonhandicap
3    accessible?
4  A. No. Because what I was -- what she asked
5    me -- well, I think he even asked -- no,
6    she asked me that, if he could fit through
7    the hallway, because the hallways are kind
8    of narrow. And he was going toward the
9    bathroom. And you have to see the
10   apartment. That's why I mentioned the
11   bathroom to them.
12 Q. Well, they'd been to the apartment --
13 A. Right.
14 Q. -- and so he obviously knew whether his
15   wheelchair could go down the hall, right?
16 A. Well, he didn't go down the hallway. He
17   just stayed in the living room. He just
18   sat in the living room in his wheelchair.
19 Q. All right. Well, when you told them that
20   the apartment was not handicap
21   accessible --
22 A. Right.
23 Q. -- other than the grab bar, what else did
24   you have in mind?
25 A. I didn't have anything in mind. I just

Pages 17 to 20

334.262.3332    Baker & Baker Reporting and Video Services, Inc.    334.262.3332
888.253.3377    Certified Court Reporters and Certified Legal Video Specialists    888.253.3377

**Page 21**

1 told him it wasn't.
2 Q. Okay. And how did you know that it wasn't
3    handicap accessible?
4 A. I don't understand what you're asking me.
5    I'm sorry.
6 Q. Well, what is your knowledge of handicap
7    accessibility?
8 A. That we don't have any grab bars in the
9    bathroom for people to get in and out of
10   the bathroom and to get into the bathtub.
11   That's, to me, handicap.
12 Q. Anything else?
13 A. No.
14 Q. And who told you about that, that in order
15   to be handicap accessible, you had to have
16   grab bars in the bathroom?
17 A. Nobody told me that. I assumed that
18   myself.
19 Q. Did whoever trained you -- and I'm sorry,
20   I've forgotten her name -- talk with you
21   about handicap accessibility at all?
22 A. No.
23 Q. So they signed the lease. Now, have we
24   talked about everything that happened
25   between you and Mr. Lancaster or Mrs. Mays

**Page 22**

1    before the lease was signed?
2 A. I think so.
3 Q. And after they signed the lease, I take it
4    that they moved in?
5 A. Yes, sir.
6 Q. Or he moved in?
7 A. Well, she moved him in.
8 Q. Well, she didn't live there, though, did
9    she?
10 A. No. She didn't live there, but she
11   brought everything over there in the van.
12 Q. When was the first time you recall anyone
13   discussing with you a wheelchair ramp for
14   Mr. Lancaster's use?
15 A. I don't know the date.
16 Q. I'm sure you don't, but --
17 A. I don't. I remember --
18 Q. Approximately, when was it in terms of --
19   in terms of the signing of the lease or
20   moving in or whatever?
21 A. It was after he moved in. It wasn't too
22   long. I don't remember when she called
23   me. I don't remember.
24 Q. Who called you?
25 A. His sister. Ms. Marie Smilie called me

**Page 23**

1    and asked if there was some way we could
2    put in a ramp for John to make it easier
3    for them to get him in and out of the
4    apartment when they had to go somewhere or
5    in case there was a fire in the evening
6    and he was there alone. And I said I will
7    call the owners. And I called the owners
8    and made the request.
9 Q. The conversation with Ms. Smilie, is that
10   the first conversation you recall about a
11   ramp?
12 A. That's the only conversation I had with
13   her about that, yes.
14 Q. Well, with anybody?
15 A. For a ramp?
16 Q. Yes, ma'am.
17 A. Yeah, just Ms. Smilie.
18 Q. Did Ms. Smilie call back again or was that
19   the sole conversation with her?
20 A. No. That was the only time she had called
21   me to ask about the ramp. And I told her
22   I would call the owners.
23 Q. And did you ever talk with either Faye
24   Mays or Mr. Lancaster about a ramp?
25 A. No.

**Page 24**

1 Q. So then what happened after you called the
2    owner?
3 A. Then the owners had a ramp put in. The
4    next thing I knew, they had called me and
5    said the ramp is in. Is that what you're
6    wanting to know?
7 Q. Well, yes, ma'am. But did the owners --
8    well, first, who did you talk to?
9 A. I called Ann Phillips.
10 Q. And made that request of her?
11 A. And told her that Ms. Smilie called me and
12   that she wanted a ramp for her brother,
13   and why.
14 Q. And what did Mrs. Phillips say?
15 A. She said, Let me see what I can do. And I
16   said, Okay. And I hung up.
17 Q. And did she ever call you back and tell
18   you she was going to?
19 A. She did call. And I think it was like the
20   next day. She said she had talked to
21   Mickey, and they would see that a ramp was
22   put in.
23 Q. Who is Mickey?
24 A. Mr. Phillips, her husband.
25 Q. And do you know who, in fact, put the ramp

Pages 21 to 24

334.262.3332                Baker & Baker Reporting and Video Services, Inc.                334.262.3332
888.253.3377           Certified Court Reporters and Certified Legal Video Specialists      888.253.3377

**Page 25**

1  in?
2  A. I never saw the person. I don't know who
3     put it in.
4  Q. Whoever put it in presumably was employed
5     by either Mr. or Mrs. Phillips?
6          MRS. WALKER: Object to the
7             form.
8  A. I don't know who it was. I don't know.
9  Q. Well, I understand that. But that would
10    be your assumption?
11         MRS. WALKER: Object to the
12            form.
13 Q. You may answer.
14         MRS. WALKER: If you know, tell
15            him.
16 A. I don't know who put it in.
17         MRS. WALKER: That's fine.
18 A. I don't know. I couldn't tell you if Joe
19    Blow -- I don't know who put it in.
20 Q. Okay. Well, were you on the premises when
21    it was put in?
22 A. No, sir.
23 Q. Do you maintain an office there on the
24    premises?
25 A. No, sir.

**Page 26**

1  Q. Where are you located physically?
2  A. At that time, I was approximately 18 miles
3     one way from the apartments.
4  Q. Where was that?
5  A. In Weoka.
6  Q. And did you go to the apartments daily
7     or . . .
8  A. No. I normally would go whenever anybody
9     called or needed me. I would go to the
10    apartments if I passed through town to
11    check on anything.
12 Q. How many units there?
13 A. Twenty.
14 Q. Along with The Cedars, did you manage
15    other apartments for Phillips Investments?
16 A. No.
17 Q. Was this a full-time job or are you
18    part-time?
19 A. I'm going to assume I'm full-time since
20    I'm twenty-four/seven.
21 Q. At the time we're talking about, were you
22    spending forty hours a week, more or less,
23    working on this job?
24 A. I didn't work forty hours a week as far as
25    standing at the apartments working. I was

**Page 27**

1     just more or less on call if someone
2     needed me.
3  Q. Would you get maintenance calls?
4  A. Did I get what?
5  Q. Maintenance calls.
6  A. Yes, sir. Any calls for anything. For
7     any reason, I got the calls first. And
8     then I would see that the proper person
9     was sent to the address, was needed.
10 Q. Right. You'd call the plumber or the
11    electrician or whomever --
12 A. Right.
13 Q. -- seemed appropriate?
14 A. Yes.
15 Q. Were you aware of this incident which
16    Mr. Lancaster had approximately around the
17    time he had it?
18         MRS. WALKER: You mean, the
19            fall?
20 Q. Did you know about this fall?
21 A. Well, they called -- Ms. Marie called me
22    to tell me that John had fallen going down
23    the ramp.
24 Q. When was that?
25 A. I don't know the date.

**Page 28**

1  Q. Well, I mean, obviously it was after the
2     fall. But within a week or two probably?
3  A. She called me -- I don't know when she
4     called me, the date. I don't know the
5     date.
6  Q. Is that all she told you, that he'd just
7     fallen going down the ramp?
8  A. She called and told me that John had
9     fallen going down the ramp. And he fell.
10 Q. Did she tell you he was hurt?
11 A. She said he hurt his leg.
12 Q. Did she say anything else?
13 A. All I know is she said that he had hurt
14    his leg and -- I'm trying to remember what
15    all was said. I think she said something
16    about she wasn't taking him to the
17    Veterans Hospital. She was taking him
18    to -- wanted to take him to a private
19    doctor. And I said I would call
20    Mr. Phillips.
21 Q. Is that all you remember about that
22    conversation?
23 A. That's -- yes. She said -- well, she said
24    that she had put cardboard down there, but
25    that didn't help, because he fell.

Pages 25 to 28

334.262.3332                Baker & Baker Reporting and Video Services, Inc.                334.262.3332
888.253.3377          Certified Court Reporters and Certified Legal Video Specialists        888.253.3377

**Page 29**

1    Because it was muddy. It had been
2    raining. I remember it had been raining.
3 Q. She said she had put cardboard down?
4 A. Right. At the end of the ramp, because it
5    was raining. It was wet. The parking lot
6    was wet.
7 Q. Well, the parking lot tended to get wet,
8    and water puddled there when it rained,
9    didn't it?
10 A. Well, it would get -- if it's raining,
11   parking lots get wet.
12 Q. Did you then go and look at the ramp after
13   she called you?
14 A. She called me about 8:00 at night. I did
15   not get up and go look at the ramp. But I
16   went there the next day.
17 Q. Well, what did you see?
18 A. The ramp was there, and there was
19   cardboard at the thing. And it was
20   raining even when I went over there.
21 Q. Raining when you went?
22 A. Uh-huh, yes, sir.
23 Q. Did you see anything else noticeable?
24 A. No.
25 Q. After that, did somebody put some rocks or

**Page 30**

1    stones down around the end of the ramp?
2 A. Put stones around the end of the ramp?
3 Q. Rock or stone or something of that nature,
4    gravel?
5        MRS. WALKER: Just anybody from
6            Phillips?
7        MR. YARBROUGH: Well, anybody
8            from anywhere.
9 A. There's always rocks down on the parking
10   lot at all times anyway, because they
11   maintain the parking lot with chat. I
12   don't know if I'm saying that right.
13 Q. Chirt?
14       THE WITNESS: What do you call
15           that stuff you put on it,
16           chat?
17       MRS. WALKER: I don't know.
18 A. What do you call it?
19 Q. Chirt?
20 A. Oh, that's what -- well . . .
21 Q. I don't think that parking lot is chirt,
22   but --
23       MRS. WALKER: What is chirt?
24       THE WITNESS: I don't know what
25           that is.

**Page 31**

1        MRS. WALKER: How do you spell
2            it?
3        MR. YARBROUGH: C-H-I-R-T.
4            Let's go off the Record.
5        (Whereupon an off-the-Record
6            discussion was held.)
7        MRS. WALKER: Okay. Let's go
8            back on.
9    BY MR. YARBROUGH:
10 Q. What do you say is put down twice a year?
11 A. I think it's called chat, is what I
12   thought they called it.
13 Q. How do you think that's spelled?
14       MRS. WALKER: If you know.
15 A. I don't know.
16 Q. Well, are you starting it with a C?
17 A. C-H-A-T.
18 Q. Okay.
19 A. That's the way it sounds like it's
20   spelled.
21 Q. All right. Good enough.
22       Did somebody put some chat down
23   after the accident?
24 A. I don't think anybody went there on
25   purpose and put it down right the day or

**Page 32**

1    two --
2 Q. I'm not asking whether it was on purpose
3    or not.
4 A. I don't know when they --
5 Q. I mean, I'm sure they put it on purpose.
6    But whether it has a relationship to the
7    accident, and I'm just asking --
8 A. I don't know. They do twice a year or so
9    or if they need it. I don't know when it
10   was put down. No, sir, I don't remember
11   that.
12 Q. Would you have records that show that?
13 A. I don't think they would. I don't know.
14   They just -- the maintenance men will come
15   and do it every once and a while with his
16   tractor and . . .
17 Q. Does he buy it from somewhere?
18 A. I guess so.
19 Q. Wouldn't somebody have sales records of
20   when it was bought?
21 A. I'm sure Mrs. Phillips would have that.
22 Q. Okay. But you wouldn't. She'd be the
23   person that would --
24 A. Right. I don't have those.
25 Q. Okay. Have you told me now everything

Pages 29 to 32

334.262.3332        Baker & Baker Reporting and Video Services, Inc.        334.262.3332
888.253.3377        Certified Court Reporters and Certified Legal Video Specialists        888.253.3377

**Page 33**

1  that was said in your conversation with
2  Marie Smilie?
3  A. As far as I can remember.
4  Q. Okay. Did anybody else talk to you about
5  Mr. Lancaster's fall?
6  A. Faye.
7  Q. Okay. And when was that?
8  A. I can't tell you if it was the next day or
9  not, but I went over there again. Because
10  when I went that first time, no one was
11  home.
12  Q. First time after what?
13  A. He had fallen.
14  Q. Well, how did you know he had fallen?
15  A. Marie called me. And when I went over
16  there the next day --
17  Q. Oh, the next day after she called you?
18  A. Right. No one was there.
19  Q. All right.
20  A. So I think it was a couple of days after
21  that I went back over there. And Faye was
22  there, Faye Mays. And I said, Faye, what
23  happened to John? She said, He fell. And
24  I says, Well, why weren't you pushing him?
25  Why don't you hold him when he goes down

**Page 34**

1  that ramp? Why didn't you hold him? And
2  she says, Well, you know how John is, he
3  told me to go get the van. I said, Okay,
4  well, I don't know. I don't know what
5  happened. She said, Well, he hurt his
6  leg.
7  Q. Okay. Is that the substance of that
8  conversation?
9  A. Yes, sir.
10  Q. Nothing more was said between you and --
11  A. And I even told her, I says, Why didn't
12  you take him out in the front, because it
13  was raining. She said, You know how
14  Mr. John is. That's the way she said it.
15  I said, You should have took him out the
16  front. It's a straight shot out. I said,
17  And it's covered if it was raining. She
18  said, Well, you know how he is. And
19  that's . . .
20  Q. Well, it was raining at the time, was it?
21  A. I don't know. I wasn't there.
22  Q. Did you have any conversations with
23  anybody else about the fall?
24  A. No. There was no one else, no.
25  Q. Did you report it to Mrs. Phillips or

**Page 35**

1  somebody at Phillips Investments?
2  A. I did. After Ms. Smilie called me, I
3  called them.
4  Q. Okay. Is there a report that you fill out
5  or anything of that nature?
6  A. No. I just call them.
7  Q. You just let them know by telephone?
8  A. Right.
9  Q. And that's the only kind of report that --
10  A. Right.
11  Q. -- that exists as far as you know?
12  A. Yes.
13  Q. Other than the lease, and I --
14     MR. YARBROUGH: Do we have
15     extensions there, too, I
16     guess?
17     MRS. WALKER: No. I've got
18     those if you need them.
19     MR. YARBROUGH: Well, I had
20     asked for them, for
21     correspondence and
22     documents between
23     Mr. Lancaster and -- just
24     stick them on if you don't
25     mind.

**Page 36**

1     MRS. WALKER: And we've got this
2     and this. I marked these
3     to give you today.
4     MR. YARBROUGH: Okay. Let me --
5     MRS. WALKER: All this. Well,
6     let me just give it to you
7     like this. I've got it
8     marked Phillips 1 through
9     11 -- that's not right.
10     Phillips 1 through 13.
11     Excuse me. And that's
12     everything in response to
13     your request.
14     MR. YARBROUGH: Well, I
15     appreciate you giving me
16     this, but I don't have any
17     idea what it is. Can you
18     enlighten me?
19     MRS. WALKER: That's something
20     he turned over to them when
21     he was moving out.
22     MR. YARBROUGH: Oh, okay. Okay.
23     It really goes with the
24     letter that was --
25     MRS. WALKER: No. That's just

Pages 33 to 36

334.262.3332                Baker & Baker Reporting and Video Services, Inc.                334.262.3332
888.253.3377        Certified Court Reporters and Certified Legal Video Specialists          888.253.3377

**Page 37**

something he gave them. It does not go with that letter.

MR. YARBROUGH: Oh, okay.

MRS. WALKER: It's one of his medical records, I think.

MR. YARBROUGH: Well, yeah. I mean, it obviously is a medical record. I just was puzzled how it came to be in their possession. But it looks like what he was doing was -- well, we don't need to go into that. Thank you.

BY MR. YARBROUGH:

Q. I've been given, by your attorney, documents which are Bates stamped Phillips 1 through 13. Does that represent, as far as you know, all correspondence or communication between Phillips and Mr. Lancaster?

A. As far as I know, that's all there is.

Q. All right.

MR. YARBROUGH: I also asked for

**Page 38**

plans and specifications on the building.

MRS. WALKER: They don't have any. Or on the ramp.

MR. YARBROUGH: Well, I figured there wouldn't be any on the ramp. There obviously would have been some on the building.

MRS. WALKER: They don't have them or they can't find them. I've asked for them.

MR. YARBROUGH: Okay. Well, if you don't have them, you don't have them. I'm trying to cut this off as quickly as I can. Would Mrs. Phillips be the person that would know the most about those kinds of things?

MRS. WALKER: She'll tell you if she --

MR. YARBROUGH: Yeah, I understand, but --

**Page 39**

MRS. WALKER: Yeah. You can ask her about it.

MR. YARBROUGH: But she would be the person to follow up on it? Right?

MRS. WALKER: Oh, yeah.

BY MR. YARBROUGH:

Q. Okay. Have you had any contact with Mr. Lancaster personally since this fall?

A. Twice.

Q. And tell me how -- let's just focus on the first time, the first of those two times. How did that come about and what was the nature of it?

A. The first time was not too long after he had fallen. And I don't know. I knocked on the door to see if he was okay. Faye says, He's fine. He's in the other room. You want to say hi? And I said, Yes. Because I have done that on previous occasions even before he had fallen. I'm just sort of like that with all of the tenants. And I went back there. And I said, Hi, how do you feel? And he said, I'm fine. He -- you know, I don't know

**Page 40**

how to explain that. He was on very high medication. He always is, always. And I said, I was just checking on you. And I left.

Q. All right. Other than just passing the time of day, so to speak --

A. That's all.

Q. -- you didn't have any significant conversations with him?

A. No, no. Both times like that.

Q. And the second time was similar to the first?

A. Same, right. Only he -- yes. Very medicated. You just never could hardly talk to him. He's very medicated most of the time.

Q. Would that also be true of your conversations with Mrs. Mays? Did you have any -- other than on those two occasions, did you have any other or different conversations with her?

A. With Faye?

Q. Yes, ma'am, since the accident.

A. Yes, sir. I've talked to Faye several times. She's called me. And I think I

Pages 37 to 40

334.262.3332
888.253.3377
Baker & Baker Reporting and Video Services, Inc.
Certified Court Reporters and Certified Legal Video Specialists
334.262.3332
888.253.3377

Judith Ann Summers
January 10, 2007

---

Page 41

1  called her once even. I was sort of
2  friends with her right after she moved in.
3  Q. Would these conversations bear on the
4     accident --
5  A. No.
6  Q. -- in any way?
7  A. No. We never talked about it, no.
8         MRS. WALKER: Make sure he
9            finishes before you answer
10           so she can get it down.
11        THE WITNESS: I'm sorry.
12        MRS. WALKER: That's all right.
13  BY MR. YARBROUGH:
14  Q. Can we just characterize those
15     conversations as social in nature?
16  A. Yes, sir.
17  Q. Is that a fair summary?
18  A. Yes.
19  Q. I don't need to go into that then?
20  A. Right.
21  Q. How about Ms. Smilie, any other
22     conversations with her?
23  A. Only for her to call me to tell me that
24     she was going to move John to her house.
25  Q. Right. And y'all didn't talk about the

Page 42

1     accident on that occasion either, I take
2     it, or the fall?
3  A. No.
4        MR. YARBROUGH: Thank you. I
5           don't have any other
6           questions.
7        MRS. WALKER: I just have one
8           follow up.
9           EXAMINATION
10  BY MRS. WALKER:
11  Q. I believe you said in your testimony that
12     you told Mrs. Faye and John Lancaster that
13     the apartments were not handicap
14     accessible?
15  A. Right.
16  Q. Were you referring to the whole complex
17     when you said that?
18  A. Yes. None of them are.
19  Q. Okay. Thank you. Oh, let me ask you
20     this: And when you were referring to the
21     whole complex, did you mean that to
22     include the parking lot and the interior
23     of his apartment as well?
24  A. Yes, ma'am.
25        MRS. WALKER: Okay. Thank you.

Page 43

1        (The deposition of JUDITH ANN
2          SUMMERS concluded at
3          approximately 2:37 p.m.)
4  * * * * * * * * * *
5  FURTHER DEPONENT SAITH NOT
6  * * * * * * * * * *

Page 44

1  * * * * * * * * * *
2        REPORTER'S CERTIFICATE
3  * * * * * * * * * *
4
5  STATE OF ALABAMA)
6  COUNTY OF MONTGOMERY)
7
8     I, Cornelia J. Baker, Certified Court
9  Reporter, Certified Shorthand Reporter,
10 and Notary Public in and for the State of
11 Alabama at Large, do hereby certify that
12 on Wednesday, January 10, 2007, pursuant
13 to notice and stipulation on behalf of the
14 Plaintiff, I reported the deposition of
15 JUDITH ANN SUMMERS, who was first duly
16 sworn by me to speak the truth, the whole
17 truth, and nothing but the truth, in the
18 matter of JOHN E. LANCASTER, Plaintiff,
19 versus PHILLIPS INVESTMENTS, L.L.C., d/b/a
20 THE CEDARS, Defendant, Case Number
21 02-T-767-N, now pending In The United
22 States District Court for the Middle
23 District of Alabama, Northern Division;
24 that the foregoing pages contain a true
25 and accurate transcription of the

Pages 41 to 44

334.262.3332                Baker & Baker Reporting and Video Services, Inc.                334.262.3332
888.253.3377          Certified Court Reporters and Certified Legal Video Specialists       888.253.3377

```
                                                    45
 1   examination of said witness by counsel for
 2   the parties set out herein; that the
 3   reading and signing of said deposition was
 4   waived by witness and counsel for the
 5   parties.
 6      I further certify that I am neither of
 7   kin nor of counsel to the parties to said
 8   cause, nor in any manner interested in the
 9   results thereof.
10      This the 23rd day of January, 2007.
11
12
13
         Cornelia J. Baker
14       Certified Shorthand Reporter,
         Certified Court Reporter and
15       Notary Public for the
         State of Alabama
16
17       My Commission expires 6/9/08.
18
19
20
21
22
23
24
25
```

Page 45

334.262.3332        Baker & Baker Reporting and Video Services, Inc.                334.262.3332
888.253.3377   Certified Court Reporters and Certified Legal Video Specialists      888.253.3377

**A**
access 19:11
 19:12
accessibility
 21:7,21
accessible
 18:20 19:4,7
 19:19,22
 20:3,21 21:3
 21:15 42:14
accessing
 18:17
accident 31:23
 32:7 40:23
 41:4 42:1
accurate 44:25
acted 11:8
acting 11:8,23
address 27:9
adjourn 6:7
affirmed 5:3
ago 5:9 7:3,17
agreed 3:5,21
 4:6
agreements
 10:18
ahead 17:22
Alabama 1:2
 1:22 2:7,12
 44:5,11,23
 45:15
Ann 1:14 3:7
 3:24 5:1
 11:11,11,17
 24:9 43:1
 44:15
answer 6:10
 25:13 41:9
anybody 11:8
 23:14 26:8
 30:5,7 31:24
 33:4 34:23
anytime 10:5
anyway 30:10
apartment
 9:14,18
 11:25 12:2
 13:12,21
 14:10,14
 15:4,19 16:6
 16:10,13,14
 17:18,25
 18:21 19:6
 19:22 20:10
 20:12,20
 23:4 42:23

apartments
 8:18,20 9:11
 13:24 26:3,6
 26:10,15,25
 42:13
APPEARAN...
 2:2
application
 18:1,4,7,10
appreciate
 36:15
appropriate
 6:7 27:13
approximately
 1:19 13:4,8
 22:18 26:2
 27:16 43:3
asked 20:4,5,6
 23:1 35:20
 37:25 38:12
asking 19:17
 21:4 32:2,7
assume 26:19
assumed 21:17
assumption
 25:10
attached 8:9
attorney 2:5
 2:11 37:17
available 14:6
 14:8 15:21
aware 27:15

**B**
back 14:23,24
 15:3,4,6 17:9
 17:10,13
 18:10,18
 23:18 24:17
 31:8 33:21
 39:23
background
 8:14
Baker 1:15
 3:10 44:8
 45:13
bar 18:22
 19:13,20,24
 20:23
bars 21:8,16
Bates 37:18
bath 19:1,5
bathroom
 18:22 19:13
 19:25 20:9
 20:11 21:9
 21:10,16

bathtub 19:1
 21:10
bear 41:3
bed 19:1
behalf 11:9,24
 44:13
believe 10:16
 42:11
bit 8:13
Blow 25:19
bought 32:20
break 6:4
brother 24:12
brought 7:9,19
 16:8 18:9
 22:11
building 38:2,9
buy 32:17

**C**
C 2:5 31:16
call 10:6 16:16
 23:7,18,22
 24:17,19
 27:1,10
 28:19 30:14
 30:18 35:6
 41:23
called 12:8
 14:3,7 17:15
 17:16,24
 18:11 22:22
 22:24,25
 23:7,20 24:1
 24:4,9,11
 26:9 27:21
 27:21 28:3,4
 28:8 29:13
 29:14 31:11
 31:12 33:15
 33:17 35:2,3
 40:25 41:1
calls 27:3,5,6,7
capacity 8:17
cardboard
 28:24 29:3
 29:19
caregiver
 13:19
Carter 7:24
case 1:8 3:23
 4:2 6:25 7:1
 23:5 44:20
cause 45:8
Cedar 8:19
Cedars 1:9
 8:20,22

26:14 44:20
CERTIFIC...
 44:2
Certified 1:16
 1:16 3:11
 44:8,9 45:14
 45:14
certify 44:11
 45:6
characterize
 41:14
chat 30:11,16
 31:11,22
check 26:11
checking 40:3
chirt 30:13,19
 30:21,23
Civil 3:9
Close 7:21
closed 7:5
Cohan 7:24
Coleman 2:11
 5:9
come 15:3,6,21
 16:9,11
 17:13 32:14
 39:13
comes 15:9
coming 16:18
commencing
 1:18
commission
 3:12 45:17
Commissioner
 1:17 3:11
communicati...
 37:21
communicati...
 11:5
complex 19:6
 42:16,21
complexes
 9:14
concluded
 43:2
concrete 15:13
 16:12
considered
 14:18
CONSTANCE
 2:5
contact 12:2
 13:6,11 39:8
contacted
 11:18
contacts 8:6
contain 44:24

contracts
 10:18,25
 11:3
controversial
 15:18
conversation
 18:15 23:9
 23:10,12,19
 28:22 33:1
 34:8
conversations
 11:12,14
 15:15 34:22
 40:9,18,21
 41:3,15,22
copy 8:4 12:10
Cornelia 1:15
 3:10 44:8
 45:13
correct 14:16
 17:3,4
corresponde...
 35:21 37:20
counsel 3:6,22
 4:7 45:1,4,7
count 5:21,25
COUNTY
 44:6
couple 7:17
 10:4 14:3
 33:20
Court 1:1,16
 3:11 5:13
 44:8,22
 45:14
covered 34:17
cut 38:16
CV-02-T-76...
 1:8
C-H-A-T
 31:17
C-H-I-R-T
 31:3

**D**
D 2:11 4:12
daily 26:6
date 22:15
 27:25 28:4,5
dated 12:12,15
 12:16
dates 12:4,5,8
daughter-in-...
 7:2
day 17:18 18:6
 18:11,13
 24:20 29:16

31:25 33:8
 33:16,17
 40:6 45:10
days 33:20
deep 14:19
defendant 1:10
 2:10 8:1
 44:20
denied 19:12
DEPONENT
 43:5
deposit 18:2
deposition
 1:14 3:7,9,17
 3:24,25 4:8
 4:18 6:18 8:3
 43:1 44:14
 45:3
depositions
 6:14
deposits 10:1
details 7:15
different 40:21
difficulty
 18:16
dirt 15:14
discussing
 22:13
discussion
 31:6
District 1:1,2
 44:22,23
Division 1:3
 44:23
Dobbs 10:12
doctor 28:19
document 8:11
documents
 35:22 37:18
doing 37:13
door 9:24,24
 15:3,7 16:7
 39:17
drink 6:5
duly 44:15
duties 9:18
D-O-B-B-S
 10:12
d/b/a 1:9 44:19

**E**
E 1:6 4:12
 44:18
easier 23:2
either 3:19 4:2
 7:25 11:21
 18:17 23:23

25:5 42:1
electrician
 27:11
employed 25:4
employee 8:14
 10:7
employment
 9:3
enlighten
 36:18
entered 13:5
estate 7:13 9:4
evening 23:5
evidence 3:18
examination
 4:14 5:6 42:9
 45:1
Excuse 36:11
Exhibit 4:17
 4:18 8:7
exists 35:11
expires 45:17
explain 16:22
 19:9 40:1
explained 19:7
extensions
 35:15

**F**
facilities 19:5
facing 15:2
fact 14:12
 24:25
fair 15:24
 41:17
fall 27:19,20
 28:2 33:5
 34:23 39:9
 42:2
fallen 27:22
 28:7,9 33:13
 33:14 39:16
 39:21
far 26:24 33:3
 35:11 37:19
 37:23
Faye 13:15,16
 13:18 15:16
 15:17 17:17
 23:23 33:6
 33:21,22,22
 39:17 40:22
 40:24 42:12
feel 39:24
fell 28:9,25
 33:23
figured 38:5

| | | | | | | |
|---|---|---|---|---|---|---|
| filing 3:23 4:4 | go 16:11 17:22 | 40:1 | 33:23 34:2 | lawsuits 6:17 | Marie 22:25 | N 4:12 |
| fill 35:4 | 20:15,16 | Hill 7:24,24 | 34:14 41:24 | 8:1 | 27:21 33:2 | name 5:9 |
| filled 14:1 18:1 | 23:4 26:6,8,9 | hold 33:25 | 42:12 44:18 | lawyer 7:23 | 33:15 | 10:11 13:17 |
| 18:9,12,13 | 29:12,15 | 34:1 | John's 13:18 | lease 9:16 | marked 8:8 | 15:16 21:20 |
| finally 15:20 | 31:4,7 34:3 | hole 18:24 | JUDITH 1:14 | 12:10,14 | 36:2,8 | narrow 20:8 |
| find 38:11 | 37:2,14 | home 7:3,4,11 | 3:7,24 5:1 | 13:4 17:14 | married 10:13 | nature 30:3 |
| finding 15:19 | 41:19 | 7:13 33:11 | 43:1 44:15 | 18:12,13 | matter 44:18 | 35:5 39:14 |
| fine 25:17 | goes 33:25 | Hospital 28:17 | | 21:23 22:1,3 | Mays 13:16 | 41:15 |
| 39:18,25 | 36:23 | hours 26:22,24 | **K** | 22:19 35:13 | 15:17 21:25 | need 3:15 5:24 |
| finishes 41:9 | going 5:12,13 | house 41:24 | kin 45:7 | leave 18:23 | 23:24 33:22 | 6:4 10:17 |
| fire 23:5 | 6:3 15:16 | hung 24:16 | kind 6:25 9:9 | left 17:11 40:4 | 40:18 | 18:25 32:9 |
| first 5:2 9:3 | 18:21 20:8 | hunk 15:13 | 20:7 35:9 | leg 28:11,14 | ma'am 12:1 | 35:18 37:14 |
| 11:21 12:2 | 24:18 26:19 | hurt 28:10,11 | kinds 38:20 | 34:6 | 23:16 24:7 | 41:19 |
| 13:5 17:8 | 27:22 28:7,9 | 28:13 34:5 | knew 19:10 | letter 36:24 | 40:23 42:24 | needed 26:9 |
| 22:12 23:10 | 41:24 | husband 7:1 | 20:14 24:4 | 37:3 | mean 6:19,22 | 27:2,9 |
| 24:8 27:7 | Good 31:21 | 24:24 | knocked 39:16 | let's 11:19 12:9 | 12:19 27:18 | negotiations |
| 33:10,12 | grab 18:22 | | know 6:6 9:13 | 12:14 31:4,7 | 28:1 32:5 | 11:3 |
| 39:12,12,15 | 19:13,20,24 | **I** | 12:8 13:17 | 39:11 | 37:8 42:21 | neither 45:6 |
| 40:12 44:15 | 20:23 21:8 | idea 36:17 | 13:18 14:19 | level 15:8 | measure 14:19 | never 17:17,20 |
| fit 20:6 | 21:16 | identification | 16:21 19:23 | line 16:16 | medical 37:6,9 | 25:2 40:14 |
| five 9:11,13 | gravel 30:4 | 8:9 | 21:2 22:15 | little 8:13 | medicated | 41:7 |
| flat 16:12 | ground 15:7 | identify 15:17 | 24:6,25 25:2 | live 22:8,10 | 40:14,15 | night 29:14 |
| focus 39:11 | guess 11:17 | important | 25:8,8,14,16 | living 20:17,18 | medication | nodding 6:11 |
| folks 7:10 | 12:1 32:18 | 5:16 6:10 | 25:18,19 | located 26:1 | 40:2 | nonhandicap |
| follow 39:4 | 35:16 | inches 14:20 | 27:20,25 | long 6:3 8:21 | meet 18:11 | 20:2 |
| 42:8 | guessing 8:25 | incident 27:15 | 28:3,4,13 | 10:3 13:4 | men 32:14 | normally 26:8 |
| follows 5:5 | | include 42:22 | 30:12,17,24 | 22:22 39:15 | mentioned | Northern 1:3 |
| foregoing | **H** | industry 9:4 | 31:14,15 | look 12:14 | 20:10 | 44:23 |
| 44:24 | hairdresser | inquisition 6:2 | 32:4,8,9,13 | 17:13 29:12 | met 5:8 | Notary 44:10 |
| forgotten | 9:2 | inside 14:13 | 33:14 34:2,4 | 29:15 | Mickey 24:21 | 45:15 |
| 21:20 | hall 16:12 | 15:20 | 34:4,13,18 | looked 14:9 | 24:23 | notice 4:18 8:4 |
| form 3:14 | 20:15 | interested 7:14 | 34:21 35:7 | 15:21,25 | Middle 1:2 | 8:5 44:13 |
| 19:15 25:7 | hallway 20:7 | 45:8 | 35:11 37:20 | 16:3,13 17:9 | 44:22 | noticeable |
| 25:12 | 20:16 | interior 14:15 | 37:23 38:19 | 17:18 18:6 | Mike 7:24 | 29:23 |
| formality 3:12 | hallways 20:7 | 42:22 | 39:16,25,25 | looking 8:12 | miles 26:2 | Number 44:20 |
| Formica 18:24 | hand 16:21 | interrupted | knowledge | looks 37:12 | Miller 10:14 | |
| forth 1:23 | handicap | 17:22 | 10:21 21:6 | lot 15:5 29:5,7 | 10:15 | **O** |
| forty 26:22,24 | 18:20 19:3,7 | introduced 4:1 | knowledgea... | 30:10,11,21 | mind 20:2,24 | Object 19:14 |
| found 7:5 | 19:12,19,21 | 9:22,25 | 11:16 | 42:22 | 20:25 35:25 | 25:6,11 |
| friends 41:2 | 20:20 21:3,6 | Investments | | lots 29:11 | minutes 5:8 | objections |
| front 14:22 | 21:11,15,21 | 1:9 8:15 | **L** | L.L.C 1:9,21 | Montgomery | 3:13,14 |
| 16:6,7,9,18 | 42:13 | 26:15 35:1 | lady 11:13 | 2:6 44:19 | 1:22 2:7,12 | obviously |
| 17:1,12 | happened 14:2 | 44:19 | Lancaster 1:6 | | 7:21 9:12 | 12:21 20:14 |
| 18:18 34:12 | 15:24 16:2 | involved 6:16 | 5:11 10:20 | **M** | 44:6 | 28:1 37:8 |
| 34:16 | 21:24 24:1 | | 11:6,22 13:6 | mail 18:3 | month 7:4 | 38:7 |
| full-time 26:17 | 33:23 34:5 | **J** | 21:25 23:24 | maintain | months 10:5 | occasion 42:1 |
| 26:19 | hard 16:5 | J 1:15 3:10 | 27:16 35:23 | 25:23 30:11 | 13:8 | occasions |
| further 3:21 | Haskell 1:20 | 44:8 45:13 | 37:22 39:9 | maintenance | motioned | 39:21 40:20 |
| 4:6 43:5 45:6 | 2:6 | Jacqueline | 42:12 44:18 | 27:3,5 32:14 | 16:20 | October 12:19 |
| | head 6:12 | 10:12,15 | Lancaster's | manage 26:14 | move 41:24 | offered 3:17 |
| **G** | held 31:6 | January 1:18 | 22:14 33:5 | managed 9:10 | moved 22:4,6 | office 25:23 |
| Gallion 1:21 | help 28:25 | 44:12 45:10 | Large 44:11 | manager 8:18 | 22:7,21 41:2 | offices 1:20 |
| 2:6 | helping 9:23 | job 26:17,23 | law 1:19 2:5 | 9:10 | moving 22:20 | off-the-Record |
| give 36:3,6 | hereto 3:19 4:3 | Joe 25:18 | 2:11 | managing 8:21 | 36:21 | 31:5 |
| given 6:14 | 8:10 | John 1:6 5:11 | Lawrence 2:7 | 9:11 | muddy 29:1 | Oh 9:20 30:20 |
| 37:17 | hi 39:19,24 | 17:17 23:2 | lawsuit 6:23 | manner 4:2 | | 33:17 36:22 |
| giving 36:15 | high 15:12 | 27:22 28:8 | 7:10 | 45:8 | **N** | 37:4 39:6 |

42:19
okay 6:8 9:1
   12:16,25
   13:10 17:19
   17:25 19:2,9
   21:2 24:16
   25:20 31:7
   31:18 32:22
   32:25 33:4,7
   34:3,7 35:4
   36:4,22,22
   37:4 38:13
   39:8,17
   42:19,25
once 6:15
   32:15 41:1
ones 13:25
on-the-job
   9:20
opened 16:6
opposed 6:11
orally 6:11
order 21:14
outside 14:17
owner 24:2
owners 23:7,7
   23:22 24:3,7

**P**
PAGE 4:14,17
pages 44:24
paid 18:2
Pardon 16:24
parking 15:5
   29:5,7,11
   30:9,11,21
   42:22
particular
   6:23
parties 3:7,23
   10:19 11:1
   45:2,5,7
party 3:19 4:3
part-time
   26:18
passed 26:10
passing 40:5
patio 14:20
   15:10,12
   17:9
pending 44:21
people 7:12
   21:9
period 6:7
person 10:21
   11:15 17:18
   25:2 27:8

32:23 38:18
   39:4
personal 7:1
personally
   39:9
Phillips 1:9
   8:15 9:23
   10:7,20 11:5
   24:9,14,24
   25:5 26:15
   28:20 30:6
   32:21 34:25
   35:1 36:8,10
   37:18,21
   38:18 44:19
physically 26:1
Pintlala 9:13
place 18:5
plaintiff 1:7
   2:4 5:10 7:25
   44:14,18
Plaintiff's 4:18
   8:7
plans 38:1
please 16:4
plumber 27:10
position 9:7
positive 17:6
possession
   37:11
Prattville 9:12
premises 18:3
   18:17 25:20
   25:24
presumably
   25:4
pretty 17:7
previous 39:20
prior 12:22
private 28:18
probably
   10:21 17:20
   28:2
Procedure 3:9
proceedings
   5:11
proper 27:8
provided 3:19
   4:3
Public 44:10
   45:15
puddled 29:8
pulled 16:5
purchased 7:3
   8:24,25
purpose 3:18
   31:25 32:2,5

pursuant 1:22
   3:8 8:3 44:12
pushing 33:24
put 18:22 23:2
   24:3,22,25
   25:3,4,16,19
   25:21 28:24
   29:3,25 30:2
   30:15 31:10
   31:22,25
   32:5,10
puzzled 37:10
p.m 1:19 43:3

**Q**
question 5:20
   10:6 13:3
questions 3:13
   3:15 5:12,14
   8:6 42:6
quickly 38:17

**R**
rained 29:8
raining 29:2,2
   29:5,10,20
   29:21 34:13
   34:17,20
ramp 11:15
   18:16 22:13
   23:2,11,15
   23:21,24
   24:3,5,12,21
   24:25 27:23
   28:7,9 29:4
   29:12,15,18
   30:1,2 34:1
   38:4,7
reading 4:8
   45:3
real 7:13 9:4
really 36:23
reason 27:7
recall 22:12
   23:10
record 31:4
   37:9
records 32:12
   32:19 37:6
reference 19:4
referring
   42:16,20
regardless 4:4
relationship
   32:6
remember
   8:23 10:16

12:4,24 16:5
   22:17,22,23
   28:14,21
   29:2 32:10
   33:3
rent 11:25
   12:2 13:12
repeat 5:25
repeated 5:24
report 34:25
   35:4,9
reported 44:14
reportedly
   11:8
Reporter 1:16
   1:17 3:11
   5:13 44:9,9
   45:14,14
REPORTER...
   44:2
represent 5:10
   37:19
representing
   2:4,10 3:6,22
request 23:8
   24:10 36:13
reserved 3:16
response 13:23
   36:12
responses 5:15
restroom 6:5
results 45:9
reviewed 8:11
right 6:21 7:8
   7:14,16 8:23
   11:14 12:6
   12:13,23
   13:20,22
   15:6,11
   16:10,12,15
   17:5 19:23
   20:1,13,15
   20:19,22
   27:10,12
   29:4 30:12
   31:21,25
   32:24 33:18
   33:19 35:8
   35:10 36:9
   37:24 39:5
   40:5,13 41:2
   41:12,20,25
   42:15
Road 2:12
Rock 30:3
rocks 29:25
   30:9

room 20:17,18
   39:18
roughly 7:18
Rules 3:8
ruling 3:16

**S**
SAITH 43:5
sales 32:19
sat 20:18
saw 25:2
saying 30:12
says 18:24
   33:24 34:2
   34:11 39:18
second 40:11
see 11:19
   12:14 20:9
   24:15,21
   27:8 29:17
   29:23 39:17
sent 27:9
September
   12:16
septic 7:6
series 5:12
set 1:23 45:2
sewer 7:6
shaking 6:11
She'd 32:22
She'll 38:22
Shorthand
   1:17 44:9
   45:14
shot 34:16
show 9:17
   32:12
showed 9:16
   9:17,21 10:1
side 15:1,2
sidewalk 16:10
   16:11
signed 17:14
   18:14 21:23
   22:1,3
significant
   40:8
signing 4:8
   22:19 45:3
similar 40:11
sir 6:9 7:22
   8:16 9:5,8
   10:10 11:2,4
   14:25 15:9
   15:23 16:1
   22:5 25:22
   25:25 27:6

29:22 32:10
   34:9 40:24
   41:16
sister 22:25
Slaughter 1:20
   2:6
Smilie 11:18
   22:25 23:9
   23:17,18
   24:11 33:2
   35:2 41:21
social 41:15
soft 6:5
sold 7:4,11,12
sole 23:19
somebody
   12:21 29:25
   31:22 32:19
   35:1
son 7:2
sorry 10:24
   12:20 17:22
   21:5,19
   41:11
sort 8:12 39:22
   41:1
sounds 31:19
South 1:21 2:7
speak 5:3
   11:21 13:14
   40:6 44:16
specifications
   38:1
spell 31:1
spelled 31:13
   31:20
spending
   26:22
spoke 17:17
stamped 37:18
standing 26:25
starting 31:16
State 44:5,10
   45:15
States 1:1
   44:22
Statute 3:20
   4:3
stayed 20:17
step 14:18
   16:17,17,19
   steps 13:13,21
   13:25 14:1,8
   14:12,13,15
   14:16 15:7
   15:20
step-down

14:20
stick 35:24
stipulated 3:5
   3:21 4:6
stipulation
   44:13
stipulations
   1:23 3:3
stone 30:3
stones 30:1,2
story 13:1
straight 34:16
street 1:21 2:7
   15:2,2,4
stuff 30:15
substance
   13:10 34:7
suit 7:20
summary
   15:24 41:17
Summers 1:14
   3:8,24 5:1,8
   43:2 44:15
sure 5:17,18
   5:23 17:7
   22:16 32:5
   32:21 41:8
sworn 5:2
   44:16

**T**
take 5:14 7:10
   10:3 17:25
   18:4 22:3
   28:18 34:12
   42:1
taken 1:15 3:8
   3:10 8:3
talk 10:17
   21:20 23:23
   24:8 33:4
   40:15 41:25
talked 12:21
   21:24 24:20
   40:24 41:7
talking 15:1
   26:21
tank 7:6
telephone 35:7
tell 5:21 12:7
   12:25 14:4,5
   15:16 16:3
   24:17 25:14
   25:18 27:22
   28:10 33:8
   38:22 39:11
   41:23

334.262.3332
888.253.3377

Baker & Baker Reporting and Video Services, Inc.
Certified Court Reporters and Certified Legal Video Specialists

334.262.3332
888.253.3377

| | | | | |
|---|---|---|---|---|
| tenants 39:23 | 9:20 | 36:19,25 | X 4:12 | 36106 2:12 |
| tended 29:7 | transcription | 37:5 38:3,10 | | |
| terms 22:18,19 | 44:25 | 38:22 39:1,6 | **Y** | **4** |
| testified 5:5 | trial 4:1 | 41:8,12 42:7 | Yarbrough | 42 4:15 |
| testimony | true 40:17 | 42:10,25 | 2:11 4:15 5:7 | |
| 42:11 | 44:24 | want 5:17,18 | 5:10 10:25 | **5** |
| Thank 37:15 | truth 5:3,4,4 | 6:4 8:5 12:4 | 30:7 31:3,9 | |
| 42:4,19,25 | 44:16,17,17 | 12:25 13:1 | 35:14,19 | 5 4:15 |
| thereof 45:9 | trying 28:14 | 39:19 | 36:4,14,22 | **6** |
| they'd 20:12 | 38:16 | wanted 13:12 | 37:4,7,16,25 | |
| thick 15:13 | turned 36:20 | 13:20 24:12 | 38:5,13,24 | 6/9/08 45:17 |
| thing 18:19 | Twenty 26:13 | 28:18 | 39:3,7 41:13 | **8** |
| 20:1 24:4 | twenty-four/... | wanting 24:6 | 42:4 | |
| 29:19 | 26:20 | wasn't 21:1,2 | yeah 9:21 | 8 4:18 |
| things 10:17 | twice 31:10 | 22:21 28:16 | 23:17 37:7 | 8:00 29:14 |
| 38:21 | 32:8 39:10 | 34:21 | 38:24 39:1,6 | |
| think 6:3 7:19 | two 7:3 28:2 | water 29:8 | year 31:10 | |
| 7:20 9:12 | 32:1 39:12 | way 12:9 17:5 | 32:8 | |
| 10:13,16 | 40:19 | 17:6,7 23:1 | years 7:3,17 | |
| 15:18 20:5 | | 26:3 31:19 | Young 1:20 | |
| 22:2 24:19 | **U** | 34:14 41:6 | 2:6 | |
| 28:15 30:21 | Uh-huh 29:22 | ways 19:19,20 | y'all 41:25 | |
| 31:11,13,24 | understand | Wednesday | | |
| 32:13 33:20 | 5:17,18,19 | 1:18 44:12 | **Z** | |
| 37:6 40:25 | 5:20,22 6:13 | week 26:22,24 | Zelda 2:12 | |
| thought 31:12 | 19:16 21:4 | 28:2 | | |
| three 13:8 | 25:9 38:25 | weeks 14:3 | **0** | |
| 17:20 | understood | went 17:10,11 | 02-T-767-N | |
| threshold | 11:23 | 29:16,20,21 | 44:21 | |
| 16:19,23,25 | Union 1:21 | 31:24 33:9 | | |
| time 3:15,17 | United 1:1 | 33:10,15,21 | **1** | |
| 6:3,8 10:6 | 44:21 | 39:23 | 1 4:18 8:8 36:8 | |
| 12:22 17:8 | units 26:12 | Weoka 26:5 | 36:10 37:19 | |
| 22:12 23:20 | use 6:4 22:14 | weren't 33:24 | 1:59 1:19 | |
| 26:2,21 | | wet 29:5,6,7,11 | 10 1:18 44:12 | |
| 27:17 33:10 | **V** | we'll 6:6 | 11 36:9 | |
| 33:12 34:20 | van 22:11 34:3 | we're 26:21 | 111 14:11,12 | |
| 39:12,15 | versus 44:19 | we've 36:1 | 13 36:10 37:19 | |
| 40:6,11,16 | Veterans | wheelchair | 18 26:2 | |
| times 30:10 | 28:17 | 11:15 16:8 | | |
| 39:12 40:10 | visit 16:3 | 18:16 19:10 | **2** | |
| 40:25 | vs 1:8 | 20:15,18 | 2:37 43:3 | |
| today 10:18 | | 22:13 | 20th 12:19 | |
| 36:3 | **W** | witness 4:7,9 | 2000 8:23 | |
| told 13:24 14:7 | waived 3:25 | 5:2 8:11 | 2002 8:25 | |
| 16:7 18:19 | 4:9 45:4 | 16:20 19:16 | 2004 7:20 | |
| 20:19 21:1 | waiving 4:4 | 30:14,24 | 12:17,19 | |
| 21:14,17 | WALKER 2:5 | 41:11 45:1,4 | 2007 1:18 | |
| 23:21 24:11 | 4:15 10:23 | words 17:20 | 44:12 45:10 | |
| 28:6,8 32:25 | 11:11 12:6 | work 26:24 | 23rd 45:10 | |
| 34:3,11 | 12:18 13:2 | working 26:23 | 2860 2:12 | |
| 42:12 | 19:14 25:6 | 26:25 | | |
| town 26:10 | 25:11,14,17 | wouldn't 32:19 | **3** | |
| tractor 32:16 | 27:18 30:5 | 32:22 38:6 | 3 14:20 | |
| trained 9:14 | 30:17,23 | Wow 7:7 | 305 1:21 2:7 | |
| 21:19 | 31:1,7,14 | | 31st 12:16 | |
| training 9:6,9 | 35:17 36:1,5 | **X** | 36104 2:7 | |