# Condensed Transcript

# Deposition of
# Ann Phillips

taken on
January 10, 2007

John E. Lancaster
v.
Phillips Investments, LLC, d/b/a The Cedars

Case No. CV-02-T-767-N



Certified Court Reporters and Certified Legal Video Specialists
334.262.3332  1.888.253.DEPS
Email: depo@baker-baker.com
www.baker-baker.com

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN E. LANCASTER,
    Plaintiff,
vs.    CASE NO. CV-02-T-767-N
PHILLIPS INVESTMENTS, L.L.C.,
d/b/a THE CEDARS,

    Defendant.

* * * * * * * *

The deposition of ANN PHILLIPS was taken before Cornelia J. Baker, Certified Court Reporter and Certified Shorthand Reporter, as Commissioner, on Wednesday, January 10, 2007, commencing at approximately 2:38 p.m., at the law offices of Haskell, Slaughter, Young and Gallion, L.L.C., 305 South Union Street, Montgomery, Alabama, pursuant to the stipulations set forth herein.

* * * * * * * *

## Page 2

* * * * * * *
APPEARANCES

Representing the Plaintiff:
  MRS. CONSTANCE C. WALKER
  Attorney at Law
  Haskell, Slaughter, Young &
    Gallion, L.L.C.
  305 South Lawrence Street
  Montgomery, Alabama 36104

Representing the Defendant:
  MR. D. COLEMAN YARBROUGH
  Attorney at Law
  2860 Zelda Road
  Montgomery, Alabama 36106

## Page 3

* * * * * * * *

STIPULATIONS

It is hereby stipulated and agreed by and between counsel representing the parties that the deposition of ANN PHILLIPS is taken pursuant to the Rules of Civil Procedure, and that said deposition may be taken before Cornelia J. Baker, Certified Court Reporter, as Commissioner, without the formality of a commission; that objections to questions, other than objections as to the form of the questions, need not be made at this time, but may be reserved for a ruling at such time as the deposition may be offered into evidence, or used for any other purpose by either party hereto, provided by the Statute.

It is further stipulated and agreed by and between counsel representing the parties in this case, that the filing of the deposition of ANN PHILLIPS is hereby waived, and that said deposition may be

## Page 4

introduced at the trial of this case or used in any other manner by either party hereto provided for by the Statute, regardless of the waiving of the filing of same.

It is further stipulated and agreed by and between counsel and the witness that the reading and signing of the deposition by the witness is hereby waived.

* * * * * * * *

Pages 1 to 4

334.262.3332    Baker & Baker Reporting and Video Services, Inc.    334.262.3332
888.253.3377    Certified Court Reporters and Certified Legal Video Specialists    888.253.3377

**Page 5**

1   ANN PHILLIPS,
2   The Witness, having first been sworn or
3   affirmed to speak the truth, the whole
4   truth, and nothing but the truth,
5   testified as follows:
6   EXAMINATION
7   BY MR. YARBROUGH:
8   Q. Mrs. Phillips, we met a little while ago,
9   but again, I'm Coleman Yarbrough. And as
10  you know, I represent John Lancaster in
11  this matter.
12      Are you familiar with the
13  deposition process? Have you given a
14  deposition before?
15  A. I've never been in one before, no, sir.
16  Q. Well, I'm going to ask you a series of
17  questions, and you're going to answer
18  those questions. And the Court Reporter
19  is going to take down my questions and
20  your answers. It's important in that
21  process that you and I communicate with
22  each other fairly. I want you to
23  understand my questions, and I want to be
24  able to understand your answers.
25  A. Okay.

**Page 6**

1   Q. If I ask you a question that you don't
2   understand, may I count on you to tell me
3   that you don't understand it and give me
4   an opportunity to ask it again?
5   A. Uh-huh, yes.
6   Q. And would you please answer orally and
7   refrain from using noises like uh-huh or
8   huh-uh --
9   A. Okay.
10  Q. -- which tend to confuse the Court
11  Reporter. She's good, but she's not that
12  good. And also that goes for the nodding
13  or shaking the head --
14  A. Okay.
15  Q. -- which makes it more difficult for her.
16      I don't think this is going to
17  take too long, but if you need to take a
18  break or use the restroom or have a soft
19  drink or for whatever reason, you just let
20  us know and we'll do that, okay?
21  A. Okay.
22  Q. Tell me your name, please.
23  A. Ann Phillips.
24  Q. Is it A-N-N?
25  A. Yes, sir.

**Page 7**

1   Q. And are you one of the principals of
2   Phillips Investments, L.L.C.?
3   A. No.
4   Q. Who are the principals of Phillips
5   Investments, L.L.C.?
6   A. Mickey Phillips, my husband.
7   Q. Is that an Alabama Limited Liability
8   Company?
9   A. Yes, I would assume.
10  Q. Was it organized in Montgomery?
11  A. Yes -- or yes, it would have been.
12  Q. And his name is Mickey Phillips?
13  A. Yes.
14  Q. And is he the sole owner of Phillips
15  Investments?
16  A. Yes.
17  Q. What is your role with that company?
18  A. I handle all of the -- I handle the
19  bill paying of the bills with the
20  apartments. If Judy has any trouble, she
21  calls -- she contacts me. She calls me.
22  I'm her contact with being in charge of
23  the money and if we have money to do
24  repairs and what not.
25  Q. Are you an officer of the L.L.C.?

**Page 8**

1   A. No.
2   Q. Are you an employee of the L.L.C.?
3   A. No.
4   Q. You're just helping out your husband sort
5   of informally; is that a fair statement?
6   A. Yes, that's a fair statement.
7   Q. Look at the document that I've put in
8   front of you. And that's a copy of the
9   notice of this deposition. And the reason
10  that I've given it to you is that it
11  outlines some of the things that we want
12  to talk about today, and some of the
13  things that I've asked you to bring with
14  you.
15      I have already been furnished
16  what's been marked as Phillips 1 through
17  13. And I understand from your lawyer
18  that that's responsive to No. A, all
19  contracts or agreements between the
20  parties.
21      MRS. WALKER: That's responsive
21      to everything.
23      MR. YARBROUGH: That's
24      responsive to everything?
25      MRS. WALKER: Yes, sir.

Pages 5 to 8

334.262.3332                Baker & Baker Reporting and Video Services, Inc.                334.262.3332
888.253.3377        Certified Court Reporters and Certified Legal Video Specialists         888.253.3377

Ann Phillips
January 10, 2007

**Page 9**

1  MR. YARBROUGH: And that's all
2     you have? That's
3     responsive to everything?
4  MRS. WALKER: Right.
5  MR. YARBROUGH: Okay. You don't
6     have insurance coverage on
7     those?
8  MRS. WALKER: Well, I previously
9     gave you that in our
10    initial disclosures. I've
11    got it right here.
12 MR. YARBROUGH: Okay. No. Did
13    you give me a copy of the
14    policy?
15 MRS. WALKER: I gave you the dec
16    page or whatever showed the
17    limits.
18 MR. YARBROUGH: Okay. At some
19    point, I want to get a copy
20    of the policy. If you
21    don't have it now, that's
22    fine. I'm not hung up on
23    that. But at some point, I
24    would appreciate you just
25    getting me a full -- you're

**Page 10**

1     right. You did give me the
2     dec page.
3  MRS. WALKER: Okay.
4  BY MR. YARBROUGH:
5  Q. Is there any question about coverage? The
6     insurance company hasn't told you that
7     they're defending this under a reservation
8     of rights or anything of that nature?
9  A. No.
10 Q. All right. And you only have the one
11    policy of insurance?
12 A. Yes.
13 Q. There's no umbrella coverage?
14 A. No.
15 Q. Are there any -- I've asked for plans and
16    specifications for the wheelchair ramp.
17    Are there none?
18 A. No.
19 Q. And I've asked for plans and
20    specifications of the apartment units
21    themselves?
22 A. We don't have any of that.
23 Q. Okay. Did you-all buy this already in
24    existence or did you build it?
25 A. It was in existence already.

**Page 11**

1  Q. From whom did you purchase it?
2  A. I -- I don't know.
3  Q. Approximately, when was it purchased?
4  A. I believe it was in 2001.
5  Q. Do you have -- when I say "you" now, I'm
6     referring not to you personally, but
7     Phillips Investments. You have closing
8     documents that would show us who you
9     bought it from?
10 A. Yes.
11 Q. Would you mind making something of that
12    nature available to your lawyer to be
13    forwarded to me --
14 A. No, I don't mind.
15 Q. -- so I can follow up on getting copies of
16    the plans if there are any?
17 A. I don't mind.
18 Q. Thank you. And let me tell you that I
19    don't need -- I don't need a stack of
20    documents that thick, just a copy of the
21    deed or the closing statement or anything
22    of that nature that would tell me who the
23    seller is. That's what I'm looking for,
24    okay?
25 A. Okay.

**Page 12**

1  MRS. WALKER: You know, it would
2     be best if you'd just write
3     me something in writing so
4     I'll have it.
5  MR. YARBROUGH: I'll do that.
6  MRS. WALKER: And I'll just use
7     that as a request for
8     production.
9  MR. YARBROUGH: I'll be glad to
10    do that. No problem.
11 BY MR. YARBROUGH:
12 Q. You don't go to the premises on a routine
13    basis, I take it?
14 A. No, I do not.
15 Q. Does Phillips Investments own other
16    investment properties than The Cedars?
17 A. No.
18 Q. When's the first time, to your knowledge,
19    you ever heard of John Lancaster?
20 A. I believe it was in April when he moved
21    in.
22 Q. And how did that occur?
23 A. My -- Judy, the manager, called and said
24    that she had a tenant that was in a
25    wheelchair and could we have a ramp built

Page 13

1  for his convenience.
2  Q. And what was your response?
3  A. I said, I don't know, let me call Mickey,
4     my husband, and see what he has to say
5     about that.
6  Q. And did you do that?
7  A. I did.
8  Q. And what was Mickey's response?
9  A. He said let me call Junior, which is Don
10    Blankenship, which is the gentleman who
11    built the ramp. He said, Let me call him
12    and see how much he would charge to build
13    a ramp, and I'll get back with you.
14 Q. Okay. And did he do so?
15 A. Did who do so?
16 Q. Did your husband call you back after he
17    had spoken with Mr. Blankenship?
18 A. I'm not really sure if Mickey called me
19    back or Don called me -- or Junior. I
20    call him Junior -- if Junior called me
21    back. I don't remember who called me
22    back, but I remember them saying that,
23    yeah, they could build a ramp.
24 Q. So Phillips, in some fashion or another,
25    hired Mr. Blankenship to build the ramp;

Page 14

1  is that --
2  A. We did.
3  Q. Okay. Did you tell -- "you" is collective
4     now. Again, not you personally.
5  A. Right.
6  Q. Okay. You and your husband or whoever
7     spoke with Mr. Blankenship, did you give
8     him any instructions as to what kind of
9     ramp to build or how to build it or did
10    you just assume he would know?
11 A. We did not give him any specifications on
12    how to build it, no.
13 Q. You just assumed he would know how to
14    build a wheelchair ramp?
15 A. Right.
16 Q. And did you tell him where to build it?
17 A. I don't know if I told him -- I know I did
18    not tell him where to build the ramp. I
19    believe he went to the apartment, which
20    would be 111 where John lives, and looked
21    at where -- I don't know. He didn't ask
22    me where to build it. I think --
23 Q. Well, somebody must have told him that
24    111 --
25 A. I think he went to -- oh, we did tell him

Page 15

1  where. You mean, physically or at just
2  111?
3  Q. Well, both. I really meant both, but
4     that's all right.
5  A. Oh.
6  Q. Somebody told him that it was for
7     apartment 111, I take it?
8  A. Yes.
9  Q. And your best understanding is that he
10    then went to 111 and made a decision where
11    at 111 to build the ramp?
12        MRS. WALKER: Object to the
13           form.
14           If you know, tell him.
15 A. No, I think -- I don't remember exactly
16    what was said. But I think, if I'm not
17    mistaken, he might have talked to John
18    Lancaster or the caregiver and said, Where
19    would you like the ramp built? And, you
20    know, Where would be a convenient spot to
21    build this ramp? It's not real clear to
22    me, because -- I think he was in contact
23    with them. I believe so. But I can't --
24    I think you'd have to ask him that.
25 Q. I will. But let me ask you: Did you

Page 16

1  understand from your conversation with
2  Ms. Smilie that --
3  A. I did not have a conversation with
4     Ms. Smilie.
5  Q. Oh, I'm sorry. You're right. I know you
6     didn't.
7        Did you understand from your
8     conversation with Judy Summers that you
9     were talking about a back-door ramp as
10    opposed to a front-door ramp?
11 A. Yes.
12 Q. Okay. So that was presumably passed on to
13    Mr. Blankenship?
14 A. Yes.
15 Q. And as far as you can recall today, that's
16    the first time you ever knew that
17    Mr. Lancaster was a tenant or had any
18    knowledge of him or any contact with
19    anybody on his behalf; is that fair?
20 A. That's fair.
21 Q. When's the --
22 A. Oh, excuse me. That's not true. I do
23    know when a tenant moves in. Because it
24    goes on our rent register, and I control
25    the rent register. So when someone new

Pages 13 to 16

334.262.3332                Baker & Baker Reporting and Video Services, Inc.              334.262.3332
888.253.3377        Certified Court Reporters and Certified Legal Video Specialists       888.253.3377

**Page 17**

1 moves in, she tells me the tenant's name,
2 and I write it down. So, yes, I wrote
3 down his name.
4 Q. But that had no significance --
5 A. Correct.
6 Q. -- to you in terms of personality at that
7 time, right?
8 A. Yes, correct.
9 Q. When is the next time, after the
10 conversation that you've just related to
11 me, that you heard from anyone on behalf
12 of Mr. Lancaster?
13 A. I believe it was a couple of days after
14 the ramp was in, because I believe Judy
15 called and said that the ramp was in. And
16 I said, How was it? And she said, It's
17 fine.
18 Q. Okay. That's the conversation between you
19 and Judy?
20 A. Yes. You're talking about a conversation
21 with . . .
22 Q. I was. But what you've told me is fine.
23 And I was going to ask you about that
24 anyway, so you're just one jump ahead of
25 me.

**Page 18**

1 A. Okay. Can you repeat the first question?
2 Q. Yes. What I was trying to ask you was
3 about conversations with Mr. Lancaster,
4 himself. And I take it you never had a
5 conversation with him?
6 A. I don't have conversations with the
7 tenants.
8 Q. All right. You had one conversation with
9 his sister, Ms. Smilie?
10 A. I did? No.
11 Q. You've had no conversations with her?
12 A. No.
13 Q. You've had no conversations with
14 Mrs. Mays?
15 A. No.
16 Q. So you've had no personal contact with
17 either Mr. Lancaster or anyone acting on
18 his behalf?
19 A. No, I have not.
20 Q. And as far as you know, your husband
21 hasn't either?
22 A. I don't know.
23 Q. Well, as far as you know, he has had none;
24 is that fair?
25        MRS. WALKER: Object to the

**Page 19**

1 form.
2 Q. You may answer.
3 A. Do what?
4        MRS. WALKER: You can answer.
5        Do you know if he's had any
6        contact?
7 A. He said he did with Ms. Smilie.
8 Q. All right. He said he had had contact
9 with Ms. Smilie. What did he tell you
10 about that?
11 A. He didn't tell me about the conversation.
12 Q. When did he tell you that?
13 A. I don't remember that.
14 Q. What was the context in which that
15 conversation took place?
16 A. Well, I don't understand the question.
17 Q. Well, how did you and your husband happen
18 to be talking about his conversation with
19 Ms. Smilie?
20 A. Well, apparently Ms. Smilie wanted my
21 husband's phone number to call him. And
22 we have a policy of we do not give out our
23 phone number to the tenants. So she said
24 Ms. Smilie wanted his phone number. And I
25 said, You could --

**Page 20**

1 Q. Who said?
2 A. Judy. I'm sorry. Judy is my mother.
3 Sorry.
4 Q. Okay.
5 A. She asked for -- she asked what to do.
6 And I said, Well, tell Ms. Smilie we'll
7 take her phone number and Mickey can call
8 her back. So I assume he probably came
9 home, and I said, Did you call Ms. Smilie?
10 And he said, Yes. And that was the extent
11 of it.
12 Q. Okay. And that was shortly after the
13 fall, his fall, do you think?
14 A. I believe so.
15 Q. All right. Any other personal contacts
16 between either you or your husband with
17 either Mr. Lancaster or Mrs. Mays or
18 Ms. Smilie?
19 A. No.
20 Q. Or anybody else acting on Mr. Lancaster's
21 behalf that you know of?
22 A. That I -- no. No.
23 Q. When and how were you made aware that
24 Mr. Lancaster had hurt himself on a ramp?
25 A. Judy called me and said that Mr. Lancaster

Pages 17 to 20

334.262.3332                Baker & Baker Reporting and Video Services, Inc.                334.262.3332
888.253.3377       Certified Court Reporters and Certified Legal Video Specialists           888.253.3377

**Page 21**

1  got hurt and that they wanted to take him
2  to the doctor or he went to the doctor. I
3  don't remember the exact wordage. And I
4  told her, Well, let me know what happens.
5  And then I called Mickey, and I told him
6  that Mr. Lancaster was hurt. I said, What
7  do you think we should do? He said, Call
8  the insurance company, they'll handle it.
9  So then I called the insurance company and
10 made a claim. And then the claim person,
11 he called me back. He said, Don't do
12 anything. I'll handle it.
13 Q. Okay. Was that Mr. Price?
14 A. Wiley Price.
15 Q. Wiley Price?
16 A. Yes.
17 Q. After that, did you have any other
18 conversations with Mrs. Summers about the
19 Lancaster matter?
20 A. You mean, after we filed the insurance
21 claim.
22 Q. Yes, ma'am.
23 A. I think the only conversation we probably
24 had after that was, Have you heard
25 anything from the insurance company?

**Page 22**

1  Other than he's wanting to renew his
2  lease, yes --
3  Q. Let's exclude matters that deal with
4  routine lease matters.
5  A. Oh, you mean in --
6  Q. I'm just trying to find out about matters
7  involving this lawsuit or his injuries or
8  anything of that nature.
9  A. Oh, I'm sorry.
10 Q. No, no. I didn't ask the question very
11 well. That's my fault, not yours. But go
12 ahead.
13 A. So you're asking me if we had any
14 conversations in regards to John Lancaster
15 and the lawsuit?
16 Q. Right. Any conversations with
17 Mr. Lancaster that dealt with how the
18 accident happened or how badly he was hurt
19 or anything of that -- those kinds of
20 things? Not whether he paid his rent on
21 time or wanted to renew or rental matters.
22 A. Oh, excuse me. I can't -- I can't
23 remember the exact conversations. She
24 might have asked me should we have the
25 ramp removed. And I probably said no. I

**Page 23**

1  can't --
2       MRS. WALKER: Don't guess. Just
3       tell him what you remember.
4  A. I don't really -- I don't really remember,
5  other than -- I'm trying to think. She
6  did tell me when she'd go over there, she
7  would ask Faye how he was doing. And she
8  would tell me that.
9  Q. What would she tell you?
10 A. She'd say, He's doing as well as can be
11 expected and --
12 Q. Did she ever tell you he had to have his
13 leg cut off as a result of this?
14 A. I think she did.
15 Q. Okay. Anything else that you can think
16 of?
17 A. She did tell me that Faye was not pushing
18 John, that Faye was driving the van.
19 Q. At the --
20 A. At the time --
21 Q. -- time this happened?
22 A. The time that he fell, that Faye -- she
23 said, Faye, what happened? Because I
24 asked her. I said, How did he fall off
25 the ramp? Because apparently I do

**Page 24**

1  remember Don telling me that he
2  specifically put side rails on the ramp.
3  Because he called and said -- yeah, now I
4  remember. He called to tell me that he
5  put side rails on the ramp so his wheels
6  wouldn't slip off of it.
7  Q. Mr. Blankenship told you --
8  A. Yes.
9  Q. -- that he put side rails on it?
10 A. Not side rails. Like two by fours on the
11 side of the ramp about this high. So if
12 he was going down the ramp and his wheel
13 accidentally slipped, he wouldn't fall off
14 of the ramp. And so I said, How did he
15 fall off the ramp? And she said -- my
16 mother, Judy, said he was going down the
17 ramp. And she said to Faye, Faye, why
18 weren't you pushing him? And she said,
19 Well, I was getting the van. And I
20 remember her telling me that. We were
21 discussing how he could have fallen off
22 the ramp, because there were those side
23 pieces. I believe they were two by fours.
24 I think that's what he told me.
25 Q. Are you aware of the provisions of the

Pages 21 to 24

334.262.3332          Baker & Baker Reporting and Video Services, Inc.          334.262.3332
888.253.3377      Certified Court Reporters and Certified Legal Video Specialists   888.253.3377

**Page 25**

1  Americans with Disabilities Act?
2  A. No.
3  Q. Don't know anything about it at all?
4  A. No.
5  Q. Don't know that it has very specific
6     requirements for wheelchair ramps?
7  A. No.
8  Q. And places for public accommodations and
9     things of that nature?
10 A. No.
11 Q. Do you know when these apartments were
12    built, approximately. I know you don't
13    know to the day.
14 A. I believe, from looking at -- Connie asked
15    me when they were built and --
16        MRS. WALKER: Don't tell him
17           what you and I have talked
18           about.
19        THE WITNESS: Oh, I'm sorry.
20        MRS. WALKER: That's okay.
21 A. I think they were built in the '80s. One
22    building was constructed first and then
23    the second building was built.
24 Q. Okay. Let's talk about the building that
25    contains 111. Give me your best judgment

**Page 26**

1     when that was built.
2  A. 1982.
3  Q. And what are you basing that on?
4  A. We had an appraisal done a couple of years
5     ago, and it was on the appraisal report.
6  Q. Okay. Have you had any substantial work
7     done, any substantial remodeling of those
8     apartments since 1982 or has there been
9     any, whether you did it or not?
10 A. Are you referring to the interior or the
11    exterior?
12 Q. Either.
13 A. A new roof was put on a couple of years
14    ago. It had storm damage, and the
15    insurance paid for a new roof. And we
16    have remodeled each -- when I say
17    remodeled, I mean we put in new flooring,
18    new carpet, a new stove, refrigerator,
19    when a tenant would move out.
20 Q. Sounds pretty much like remodeling to me.
21 A. Well, I mean, yes, I would say we have
22    done a lot of cosmetic things to the
23    interior. They were pretty bad. And we
24    also put up a new fence.
25 Q. That would be behind?

**Page 27**

1  A. Yes. We put up a new fence. And we have
2     recently put up new dividers between each
3     apartment. They have a little -- it used
4     to be -- they used to be wooden. I
5     believe he might have gotten vinyl, but
6     I'm not sure. Each tenant has a little
7     patio off the back of their back door. We
8     also put in new doors.
9  Q. Back doors?
10 A. Sometimes we put in back doors. Sometimes
11    we need a new front door. We've also
12    painted all of the doors. And the light
13    fixture wasn't lit in the back parking
14    lot, and we had that turned back on. That
15    was another -- I know that's not a
16    remodel, but . . .
17 Q. Now, as I would come out of the back door
18    of these apartments -- let's just take 111
19    as an example, though they all look to me
20    like they're built the same. You would go
21    out of the, I guess, the kitchen, and then
22    there would be a very short step-down,
23    maybe a couple of inches to the little
24    patio; is that right?
25 A. I believe so. I'm not at the apartments

**Page 28**

1     enough to -- I believe so.
2  Q. Right. And if you don't know, just tell
3     me you don't know.
4  A. Okay.
5  Q. That's a perfectly good answer.
6  A. Okay.
7  Q. But then you'd be on a small concrete-type
8     patio, and then from that patio, it would
9     be a step-down of a foot or less to the
10    ground, right, a foot or so?
11        MRS. WALKER: Object to the
12           form.
13 A. I believe some apartments do have a
14    step-down and some apartments do not.
15 Q. Okay. And do you remember about this one
16    specifically?
17 A. Well, apparently, it has a step-down or a
18    ramp wouldn't have --
19 Q. Or the ramp wouldn't have been necessary,
20    right?
21 A. Correct.
22 Q. And do you recall what the front is like?
23 A. I believe the front --
24 Q. There's a little step-down in the front
25    also?

Pages 25 to 28

334.262.3332                Baker & Baker Reporting and Video Services, Inc.                334.262.3332
888.253.3377         Certified Court Reporters and Certified Legal Video Specialists         888.253.3377

**29**

1  A. I don't know about the front. I'm sorry.
2  Q. Fair enough. If you don't know, you don't
3     know.
4        MR. YARBROUGH: I don't have any
5          other questions.
6        MRS. WALKER: No questions.
7        MR. YARBROUGH: Yes, I do.
8  BY MR. YARBROUGH:
9  Q. How would I find Don Blankenship, that you
10    call Junior?
11       MRS. WALKER: I gave you that
12         information in the initial
13         disclosures.
14       MR. YARBROUGH: Okay. That
15         hasn't changed?
16       MRS. WALKER: Well, I don't
17         know.
18       MR. YARBROUGH: Well, let me ask
19         her. You're right, you
20         did.
21 BY MR. YARBROUGH:
22 Q. What's Mr. Blankenship's occupation?
23 A. I don't know. I know -- I know at the
24    time that we hired him, he was doing
25    handyman work.

**30**

1  Q. Right. And as far as you know, that's
2     what he still does?
3  A. As far as I know.
4  Q. And does he do that out of his home, as
5     far as you know, or does he have a place
6     of business?
7  A. I don't know that.
8  Q. Okay. Is he in Wetumpka?
9  A. I don't -- I think he lives in Prattville,
10    but I don't know where he -- where he
11    works from.
12       MR. YARBROUGH: Okay. That's
13         all.
14       (The deposition of ANN PHILLIPS
15         concluded at approximately
16         3:06 p.m.)
17
18    * * * * * * * * * * *
19    FURTHER DEPONENT SAITH NOT
20    * * * * * * * * * * *
21
22
23
24
25

**31**

\* \* \* \* \* \* \* \* \* \*
REPORTER'S CERTIFICATE
\* \* \* \* \* \* \* \* \* \*

STATE OF ALABAMA)
COUNTY OF MONTGOMERY)

I, Cornelia J. Baker, Certified Court Reporter, Certified Shorthand Reporter, and Notary Public in and for the State of Alabama at Large, do hereby certify that on Wednesday, January 10, 2007, pursuant to notice and stipulation on behalf of the Plaintiff, I reported the deposition of ANN PHILLIPS, who was first duly sworn by me to speak the truth, the whole truth, and nothing but the truth, in the matter of JOHN E. LANCASTER, Plaintiff, versus PHILLIPS INVESTMENTS, L.L.C., d/b/a THE CEDARS, Defendant, Case Number 02-T-767-N, now pending In The United States District Court for the Middle District of Alabama, Northern Division; that the foregoing pages contain a true and accurate transcription of the examination of said

**32**

witness by counsel for the parties set out herein; that the reading and signing of said deposition was waived by witness and counsel for the parties.

I further certify that I am neither of kin nor of counsel to the parties to said cause, nor in any manner interested in the results thereof.

This the 23rd day of January, 2007.

Cornelia J. Baker
Certified Shorthand Reporter,
Certified Court Reporter and
Notary Public for the
State of Alabama

My Commission expires 6/9/08.

Pages 29 to 31

334.262.3332
888.253.3377
Baker & Baker Reporting and Video Services, Inc.
Certified Court Reporters and Certified Legal Video Specialists
334.262.3332
888.253.3377

## A
able 5:24
accident 22:18
accidentally 24:13
accommodat... 25:8
accurate 31:24
Act 25:1
acting 18:17 20:20
affirmed 5:3
ago 5:8 26:5 26:14
agreed 3:5,21 4:6
agreements 8:19
ahead 17:24 22:12
Alabama 1:2 1:22 2:7,12 7:7 31:5,11 31:22,40
Americans 25:1
Ann 1:14 3:7 3:24 5:1 6:23 30:14 31:15
answer 5:17 6:6 19:2,4 28:5
answers 5:20 5:24
anybody 16:19 20:20
anyway 17:24
apartment 10:20 14:19 15:7 27:3
apartments 7:20 25:11 26:8 27:18 27:25 28:13 28:14
apparently 19:20 23:25 28:17
APPEARAN... 2:2
appraisal 26:4 26:5
appreciate 9:24
approximately 1:19 11:3

25:12 30:15
April 12:20
asked 8:13 10:15,19 20:5,5 22:24 23:24 25:14
asking 22:13
assume 7:9 14:10 20:8
assumed 14:13
Attorney 2:5 2:11
available 11:12
aware 20:23 24:25
A-N-N 6:24

## B
back 13:13,16 13:19,21,22 20:8 21:11 27:7,7,9,10 27:13,14,17
back-door 16:9
bad 26:23
badly 22:18
Baker 1:15 3:10 31:8,38
basing 26:3
basis 12:13
behalf 16:19 17:11 18:18 20:21 31:13
believe 11:4 12:20 14:19 15:23 17:13 17:14 20:14 24:23 25:14 27:5,25 28:1 28:13,23
best 12:2 15:9 25:25
bill 7:19
bills 7:19
Blankenship 13:10,17,25 14:7 16:13 24:7 29:9
Blankenship's 29:22
bought 11:9
break 6:18
bring 8:13
build 10:24 13:12,23,25

14:9,9,12,14 14:16,18,22 15:11,21
building 25:22 25:23,24
built 12:25 13:11 15:19 25:12,15,21 25:23 26:1 27:20
business 30:6
buy 10:23

## C
C 2:5
call 13:3,9,11 13:16,20 19:21 20:7,9 21:7 29:10
called 12:23 13:18,19,20 13:21 17:15 20:25 21:5,9 21:11 24:3,4
calls 7:21,21
caregiver 15:18
carpet 26:18
case 1:8 3:23 4:1 31:20
cause 31:32
Cedars 1:9 12:16 31:20
CERTIFIC... 31:2
Certified 1:15 1:16 3:11 31:8,9,38,39
certify 31:11 31:30
changed 29:15
charge 7:22 13:12
Civil 3:9
claim 21:10,10 21:21
clear 15:21
closing 11:7,21
Coleman 2:11 5:9
collective 14:3
come 27:17
commencing 1:18
commission 3:12 31:41
Commissioner

1:17 3:11
communicate 5:21
company 7:8 7:17 10:6 21:8,9,25
concluded 30:15
concrete-type 28:7
confuse 6:10
Connie 25:14
CONSTANCE 2:5
constructed 25:22
contact 7:22 15:22 16:18 18:16 19:6,8
contacts 7:21 20:15
contain 31:24
contains 25:25
context 19:14
contracts 8:19
control 16:24
convenience 13:1
convenient 15:20
conversation 16:1,3,8 17:10,18,20 18:5,8 19:11 19:15,18 21:23
conversations 18:3,6,11,13 21:18 22:14 22:16,23
copies 11:15
copy 8:8 9:13 9:19 11:20
Cornelia 1:15 3:10 31:8,38
correct 17:5,8 28:21
cosmetic 26:22
counsel 3:6,22 4:7 31:26,29 31:31
count 6:2
COUNTY 31:6
couple 17:13 26:4,13 27:23

Court 1:1,16 3:11 5:18 6:10 31:8,22 31:39
communicate 5:21
company 7:8 7:17 10:6
coverage 9:6 10:5,13
cut 23:13
CV-02-T-76... 1:8

## D
D 2:11
damage 26:14
day 25:13 31:34
days 17:13
deal 22:3
dealt 22:17
dec 9:15 10:2
decision 15:10
deed 11:21
Defendant 1:10 2:10 31:20
defending 10:7
DEPONENT 30:19
deposition 1:14 3:7,9,17 3:24,25 4:8 5:13,14 8:9 30:14 31:14 31:28
difficult 6:15
Disabilities 25:1
disclosures 9:10 29:13
discussing 24:21
District 1:1,2 31:21,22
dividers 27:2
Division 1:3 31:23
doctor 21:2,2
document 8:7
documents 11:8,20
doing 23:7,10 29:24
Don 13:9,19 24:1 29:9
door 27:7,11 27:17
doors 27:8,9 27:10,12

drink 6:19
driving 23:18
duly 31:15
d/b/a 1:9 31:19

## E
E 1:6 31:18
either 3:19 4:2 18:17,21 20:16,17 26:12
employee 8:2
evidence 3:18
exact 21:3 22:23
exactly 15:15
examination 5:6 31:25
example 27:19
exclude 22:3
excuse 16:22 22:22
existence 10:24,25
expected 23:11
expires 31:41
extent 20:10
exterior 26:11

## F
fair 8:5,6 16:19,20 18:24 29:2
fairly 5:22
fall 20:13,13 23:24 24:13 24:15
fallen 24:21
familiar 5:12
far 16:15 18:20,23 30:1,3,5
fashion 13:24
fault 22:11
Faye 23:7,17 23:18,22,23 24:17,17
fell 23:22
fence 26:24 27:1
filed 21:20
filing 3:23 4:4
find 22:6 29:9
fine 9:22 17:17 17:22
first 5:2 12:18 16:16 18:1

25:22 31:15
fixture 27:13
flooring 26:17
follow 11:15
follows 5:5
foot 28:9,10
foregoing 31:23
form 3:14 15:13 19:1 28:12
formality 3:12
forth 1:23
forwarded 11:13
fours 24:10,23
front 8:8 27:11 28:22,23,24 29:1
front-door 16:10
full 9:25
furnished 8:15
further 3:21 4:6 30:19 31:30

## G
Gallion 1:21 2:6
gentleman 13:10
getting 9:25 11:15 24:19
give 6:3 9:13 10:1 14:7,11 19:22 25:25
given 5:13 8:10
glad 12:9
go 12:12 22:11 23:6 27:20
goes 6:12 16:24
going 5:16,17 5:19 6:16 17:23 24:12 24:16
good 6:11,12 28:5
gotten 27:5
ground 28:10
guess 23:2 27:21

## H
handle 7:18,18

| | | | | | | |
|---|---|---|---|---|---|---|
| 21:8,12<br>handyman 29:25<br>happen 19:17<br>happened 22:18 23:21 23:23<br>happens 21:4<br>Haskell 1:20 2:6<br>head 6:13<br>heard 12:19 17:11 21:24<br>helping 8:4<br>hereto 3:19 4:3<br>high 24:11<br>hired 13:25 29:24<br>home 20:9 30:4<br>huh-uh 6:8<br>hung 9:22<br>hurt 20:24 21:1,6 22:18<br>husband 7:6 8:4 13:4,16 14:6 18:20 19:17 20:16<br>husband's 19:21<br>___ I ___<br>important 5:20<br>inches 27:23<br>informally 8:5<br>information 29:12<br>initial 9:10 29:12<br>injuries 22:7<br>instructions 14:8<br>insurance 9:6 10:6,11 21:8 21:9,20,25 26:15<br>interested 31:32<br>interior 26:10 26:23<br>introduced 4:1<br>investment 12:16<br>Investments 1:9 7:2,5,15 11:7 12:15 | 31:19<br>involving 22:7<br>___ J ___<br>J 1:15 3:10 31:8,38<br>January 1:18 31:12,34<br>John 1:6 5:10 12:19 14:20 15:17 22:14 23:18 31:18<br>judgment 25:25<br>Judy 7:20 12:23 16:8 17:14,19 20:2,2,25 24:16<br>jump 17:24<br>Junior 13:9,19 13:20,20 29:10<br>___ K ___<br>kin 31:31<br>kind 14:8<br>kinds 22:19<br>kitchen 27:21<br>knew 16:16<br>know 5:10 6:20 11:2 12:1 13:3 14:10,13,17 14:17,21 15:14,20 16:5,23 18:20,22,23 19:5 20:21 21:4 25:3,5 25:11,12,13 27:15 28:2,3 29:1,2,3,17 29:23,23,23 30:1,3,5,7,10<br>knowledge 12:18 16:18<br>___ L ___<br>Lancaster 1:6 5:10 12:19 15:18 16:17 17:12 18:3 18:17 20:17 20:24,25 21:6,19 22:14,17 | 31:18<br>Lancaster's 20:20<br>Large 31:11<br>law 1:19 2:5 2:11<br>Lawrence 2:7<br>lawsuit 22:7 22:15<br>lawyer 8:17 11:12<br>lease 22:2,4<br>leg 23:13<br>let's 22:3 25:24 27:18<br>Liability 7:7<br>light 27:12<br>Limited 7:7<br>limits 9:17<br>lit 27:13<br>little 5:8 27:3,6 27:23 28:24<br>lives 14:20 30:9<br>long 6:17<br>look 8:7 27:19<br>looked 14:20<br>looking 11:23 25:14<br>lot 26:22 27:14<br>L.L.C 1:9,21 2:6 7:2,5,25 8:2 31:19<br>___ M ___<br>making 11:11<br>manager 12:23<br>manner 4:2 31:32<br>marked 8:16<br>matter 5:11 21:19 31:17<br>matters 22:3,4 22:6,21<br>Mays 18:14 20:17<br>ma'am 21:22<br>mean 15:1 21:20 22:5 26:17,21<br>meant 15:3<br>met 5:8<br>Mickey 7:6,12 13:3,18 20:7 21:5<br>Mickey's 13:8<br>Middle 1:2 | 31:22<br>mind 11:11,14 11:17<br>mistaken 15:17<br>money 7:23,23<br>Montgomery 1:22 2:7,12 7:10 31:6<br>mother 20:2 24:16<br>move 26:19<br>moved 12:20<br>moves 16:23 17:1<br>___ N ___<br>name 6:22 7:12 17:1,3<br>nature 10:8 11:12,22 22:8 25:9<br>necessary 28:19<br>need 3:15 6:17 11:19,19 27:11<br>neither 31:30<br>never 5:15 18:4<br>new 16:25 26:13,15,17 26:18,18,24 27:1,2,8,11<br>nodding 6:12<br>noises 6:7<br>Northern 1:3 31:23<br>Notary 31:10 31:39<br>notice 8:9 31:13<br>number 19:21 19:23,24 20:7 31:20<br>___ O ___<br>Object 15:12 18:25 28:11<br>objections 3:13,14<br>occupation 29:22<br>occur 12:22<br>offered 3:17<br>officer 7:25<br>offices 1:20 | oh 14:25 15:5 16:5,22 22:5 22:9,22 25:19<br>okay 5:25 6:9 6:14,20,21 9:5,12,18 10:3,23 11:24,25 13:14 14:3,6 16:12 17:18 18:1 20:4,12 21:13 23:15 25:20,24 26:6 28:4,6 28:15 29:14 30:8,12<br>opportunity 6:4<br>opposed 16:10<br>orally 6:6<br>organized 7:10<br>outlines 8:11<br>owner 7:14<br>___ P ___<br>page 9:16 10:2<br>pages 31:24<br>paid 22:20 26:15<br>painted 27:12<br>parking 27:13<br>parties 3:7,23 8:20 31:26 31:29,31<br>party 3:19 4:2<br>passed 16:12<br>patio 27:7,24 28:8,8<br>paying 7:19<br>pending 31:21<br>perfectly 28:5<br>person 21:10<br>personal 18:16 20:15<br>personality 17:6<br>personally 11:6 14:4<br>Phillips 1:9,14 3:8,24 5:1,8 6:23 7:2,4,6 7:12,14 8:16 11:7 12:15 13:24 30:14 31:15,19<br>phone 19:21 | 19:23,24 20:7<br>physically 15:1<br>pieces 24:23<br>place 19:15 30:5<br>places 25:8<br>Plaintiff 1:7 2:4 31:14,18<br>plans 10:15,19 11:16<br>please 6:6,22<br>point 9:19,23<br>policy 9:14,20 10:11 19:22<br>Prattville 30:9<br>premises 12:12<br>presumably 16:12<br>pretty 26:20 26:23<br>previously 9:8<br>Price 21:13,14 21:15<br>principals 7:1 7:4<br>probably 20:8 21:23 22:25<br>problem 12:10<br>Procedure 3:9<br>process 5:13 5:21<br>production 12:8<br>properties 12:16<br>provided 3:19 4:3<br>provisions 24:25<br>public 25:8 31:10,39<br>purchase 11:1<br>purchased 11:3<br>purpose 3:18<br>pursuant 1:22 3:8 31:12<br>pushing 23:17 24:18<br>put 8:7 24:2,5 24:9 26:13 26:17,24 27:1,2,8,10<br>p.m 1:19 30:16<br>___ Q ___ | question 6:1 10:5 18:1 19:16 22:10<br>questions 3:13 3:15 5:17,18 5:19,23 29:5 29:6<br>___ R ___<br>rails 24:2,5,9 24:10<br>ramp 10:16 12:25 13:11 13:13,23,25 14:9,14,18 15:11,19,21 16:9,10 17:14,15 20:24 22:25 23:25 24:2,5 24:11,12,14 24:15,17,22 28:18,19<br>ramps 25:6<br>reading 4:8 31:27<br>real 15:21<br>really 13:18 15:3 23:4,4<br>reason 6:19 8:9<br>recall 16:15 28:22<br>referring 11:6 26:10<br>refrain 6:7<br>refrigerator 26:18<br>regardless 4:4<br>regards 22:14<br>register 16:24 16:25<br>related 17:10<br>remember 13:21,22 15:15 19:13 21:3 22:23 23:3,4 24:1,4 24:20 28:15<br>remodel 27:16<br>remodeled 26:16,17<br>remodeling 26:7,20<br>removed 22:25<br>renew 22:1,21<br>rent 16:24,25 |

| | | | | | |
|---|---|---|---|---|---|
| 22:20 | short 27:22 | stipulated 3:5 | think 6:16 | 4:9 31:28 | 30:12 |
| rental 22:21 | Shorthand | 3:21 4:6 | 14:22,25 | waiving 4:4 | yeah 13:23 |
| repairs 7:24 | 1:16 31:9,38 | stipulation | 15:15,16,22 | WALKER 2:5 | 24:3 |
| repeat 18:1 | shortly 20:12 | 31:13 | 15:24 20:13 | 8:21,25 9:4,8 | years 26:4,13 |
| report 26:5 | show 11:8 | stipulations | 21:7,23 23:5 | 9:15 10:3 | Young 1:20 |
| reported 31:14 | showed 9:16 | 1:23 3:3 | 23:14,15 | 12:1,6 15:12 | 2:6 |
| Reporter 1:16 | side 24:2,5,9 | storm 26:14 | 24:24 25:21 | 18:25 19:4 | you-all 10:23 |
| 1:17 3:11 | 24:10,11,22 | stove 26:18 | 30:9 | 23:2 25:16 | |
| 5:18 6:11 | significance | Street 1:21 2:7 | time 3:15,17 | 25:20 28:11 | **Z** |
| 31:9,9,38,39 | 17:4 | substantial | 12:18 16:16 | 29:6,11,16 | Zelda 2:12 |
| REPORTER... | signing 4:8 | 26:6,7 | 17:7,9 22:21 | want 5:22,23 | |
| 31:2 | 31:27 | Summers 16:8 | 23:20,21,22 | 8:11 9:19 | **0** |
| represent 5:10 | sir 5:15 6:25 | 21:18 | 29:24 | wanted 19:20 | 02-T-767-N |
| representing | 8:25 | sure 13:18 | today 8:12 | 19:24 21:1 | 31:20 |
| 2:4,10 3:6,22 | sister 18:9 | 27:6 | 16:15 | 22:21 | |
| request 12:7 | Slaughter 1:20 | sworn 5:2 | told 10:6 14:17 | wanting 22:1 | **1** |
| requirements | 2:6 | 31:15 | 14:23 15:6 | wasn't 27:13 | 1 8:16 |
| 25:6 | slip 24:6 | | 17:22 21:4,5 | Wednesday | 10 1:18 31:12 |
| reservation | slipped 24:13 | **T** | 24:7,24 | 1:17 31:12 | 111 14:20,24 |
| 10:7 | small 28:7 | take 5:19 6:17 | transcription | went 14:19,25 | 15:2,7,10,11 |
| reserved 3:16 | Smilie 16:2,4 | 6:17 12:13 | 31:25 | 15:10 21:2 | 25:25 27:18 |
| response 13:2 | 18:9 19:7,9 | 15:7 18:4 | trial 4:1 | weren't 24:18 | 13 8:17 |
| 13:8 | 19:19,20,24 | 20:7 21:1 | trouble 7:20 | Wetumpka | 1982 26:2,8 |
| responsive | 20:6,9,18 | 27:18 | true 16:22 | 30:8 | |
| 8:18,21,24 | soft 6:18 | taken 1:15 3:8 | 31:24 | we'll 6:20 20:6 | **2** |
| 9:3 | sole 7:14 | 3:10 | truth 5:3,4,4 | We've 27:11 | 2:38 1:19 |
| restroom 6:18 | somebody | talk 8:12 25:24 | 31:16,16,17 | wheel 24:12 | 2001 11:4 |
| result 23:13 | 14:23 15:6 | talked 15:17 | trying 18:2 | wheelchair | 2007 1:18 |
| results 31:33 | sorry 16:5 | 25:17 | 22:6 23:5 | 10:16 12:25 | 31:12,34 |
| right 9:4,11 | 20:2,3 22:9 | talking 16:9 | turned 27:14 | 14:14 25:6 | 23rd 31:34 |
| 10:1,10 14:5 | 25:19 29:1 | 17:20 19:18 | two 24:10,23 | wheels 24:5 | 2860 2:12 |
| 14:15 15:4 | sort 8:4 | tell 6:2,22 | | When's 12:18 | |
| 16:5 17:7 | Sounds 26:20 | 11:18,22 | **U** | 16:21 | **3** |
| 18:8 19:8 | South 1:21 2:7 | 14:3,16,18 | uh-huh 6:5,7 | Wiley 21:14,15 | 3:06 30:16 |
| 20:15 22:16 | speak 5:3 | 14:25 15:14 | umbrella | witness 4:7,9 | 305 1:21 2:7 |
| 27:24 28:2 | 31:16 | 19:9,11,12 | 10:13 | 5:2 25:19 | 32 31:25 |
| 28:10,20 | specific 25:5 | 20:6 23:3,6,8 | understand | 31:26,28 | 36104 2:7 |
| 29:19 30:1 | specifically | 23:9,12,17 | 5:23,24 6:2,3 | wooden 27:4 | 36106 2:12 |
| rights 10:8 | 24:2 28:16 | 24:4 25:16 | 8:17 16:1,7 | wordage 21:3 | |
| Road 2:12 | specifications | 28:2 | 19:16 | work 26:6 | **6** |
| role 7:17 | 10:16,20 | telling 24:1,20 | understanding | 29:25 | 6/9/08 31:41 |
| roof 26:13,15 | 14:11 | tells 17:1 | 15:9 | works 30:11 | |
| routine 12:12 | spoke 14:7 | tenant 12:24 | Union 1:21 | wouldn't 24:6 | **8** |
| 22:4 | spoken 13:17 | 16:17,23 | United 1:1 | 24:13 28:18 | 80s 25:21 |
| Rules 3:8 | spot 15:20 | 26:19 27:6 | 31:21 | 28:19 | |
| ruling 3:16 | stack 11:19 | tenants 18:7 | units 10:20 | write 12:2 17:2 | |
| | State 31:5,10 | 19:23 | use 6:18 12:6 | writing 12:3 | |
| **S** | 31:40 | tenant's 17:1 | | wrote 17:2 | |
| SAITH 30:19 | statement 8:5 | tend 6:10 | **V** | | |
| saying 13:22 | 8:6 11:21 | terms 17:6 | van 23:18 | **Y** | |
| second 25:23 | States 1:1 | testified 5:5 | 24:19 | Yarbrough | |
| see 13:4,12 | 31:21 | Thank 11:18 | versus 31:18 | 2:11 5:7,9 | |
| seller 11:23 | Statute 3:20 | thereof 31:33 | vinyl 27:5 | 8:23 9:1,5,12 | |
| series 5:16 | 4:3 | thick 11:20 | vs 1:8 | 9:18 10:4 | |
| set 1:23 31:26 | step-down | things 8:11,13 | | 12:5,9,11 | |
| shaking 6:13 | 27:22 28:9 | 22:20 25:9 | **W** | 29:4,7,8,14 | |
| she'd 23:6,10 | 28:14,17,24 | 26:22 | waived 3:25 | 29:18,21 | |