IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN E. LANCASTER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 2:06-cv-402-MEF |
| | ) |
| PHILLIPS INVESTMENTS, LLC, | ) (WO–Recommended for Publication) |
| d/b/a The Cedars, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

John E. Lancaster (hereinafter "Plaintiff") brings this action against Phillips Investments, LLC, d/b/a The Cedars (hereinafter "Defendant"), alleging premises liability and violations of the Americans with Disabilities Act (hereinafter "ADA"). Plaintiff claims that he was injured when his wheelchair overturned on a ramp provided for his use by Defendant, his landlord. He alleges that the wheelchair ramp was improperly designed, constructed, and maintained, and that it failed to comply with the ADA. This cause is before the Court on Defendant's Motion to Strike Affidavit (Doc. # 18) and Motion for Summary Judgment (Doc. # 12), as well as Plaintiff's Response to Show Cause Order (Doc. # 22), construed as a Motion to Substitute. The Court has carefully considered all submissions in support of and in opposition to the motions and surveyed the relevant case law. For the reasons set forth below, the Court finds that Defendant's Motion to Strike Affidavit is due to be DENIED, and Defendant's Motion for Summary Judgment is due to be GRANTED as to Plaintiff's ADA claims and DENIED as moot as to Plaintiff's state law claims.

## I. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction). The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P.

56(c).

## III. FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all documents submitted in support of and in opposition to the motions. Viewed in the light most favorable to Plaintiff, the submissions of the parties establish the following relevant facts:

In the spring of 2005, Plaintiff lived at The Cedars Apartments (hereinafter "The Cedars"), an apartment complex owned by Defendant in Wetumpka, Alabama. Plaintiff became paralyzed in 1972 in a logging accident. Since that accident, he has used a wheelchair. In response to requests from Plaintiff and his sister, Defendant had a wheelchair ramp built at the rear of Plaintiff's apartment for Plaintiff's use.

The ramp was constructed in late March or early April of 2005. A carpenter came to Plaintiff's apartment and asked him where the ramp should be located. Plaintiff directed him to the rear of the apartment. However, Plaintiff did not tell the carpenter how the ramp should be constructed. Plaintiff left the apartment complex and did not return until the construction was completed. When he returned, Plaintiff was not sure that the construction had been completed, and thought that the ramp "just didn't look right." As he stated in his affidavit:

> . . . I noted that the ramp had no side rails or guard rails, and that the end of it was not a flat surface. For that reason, I thought the ramp just didn't look right. Common sense told me that this ramp would not be quite as safe as one with appropriate guard rails and a smooth or level transition base. However, I certainly did not believe it to be so dangerous that I would be injured if I

used it.

(Doc. # 22 Attach. 1.) There was a gap of approximately three or four inches between the end of the ramp and the ground.

Plaintiff first attempted to use the ramp on April 7, 2005. The ground was muddy as a result of a prior rain. His caretaker, Faye Mays, helped him through the door and went to get the van. Plaintiff descended the ramp by himself. Plaintiff had no difficulty until he reached the end of the ramp. At that point, the wheels of his wheelchair came off the ramp and became stuck in the mud. Plaintiff's wheelchair tipped forward, and Plaintiff was thrown out of the wheelchair. This was the first time he had used a ramp without handrails. Plaintiff does not believe that the lack of guardrails was responsible for the accident, though he believes that had they been present he might have been able to use them to prevent himself from falling.

Plaintiff did not think that he was badly injured. However, blisters appeared on his leg and it turned purple and black. When he went to the doctor the next Monday, he learned that his leg had been broken.

Plaintiff filed this action on February 17, 2006 in the Circuit Court of Elmore County, Alabama. (Doc. # 1 Ex. A.) Defendant filed a Notice of Removal in this Court on May 3, 2006. (Doc. # 1.) Defendant filed its Motion for Summary Judgment (Doc. # 12) on January 26, 2007 and its Motion to Strike Affidavit (Doc. # 18) on February 21, 2007.

5

## IV. DISCUSSION

### A. *Motion to Strike Affidavit*

The Court first addresses Defendant's Motion to Strike Affidavit. Defendant argues that the affidavit Plaintiff attached to his Response to Defendant's Motion for Summary Judgment (Doc. # 15) should be stricken because Plaintiff did not sign the affidavit. Instead, Plaintiff filed the affidavit with an electronic signature. In his Response to this Court's Order requiring him to show cause why Defendant's Motion to Strike should not be granted (Doc. # 22), Plaintiff states that the affidavit was signed and notarized on February 14, 2007. He states that he electronically signed the affidavit based on the Local Rules of this Court. The Local Rules, though, do not excuse the Plaintiff from compliance with Federal Rule of Civil Procedure 56(e). However, Plaintiff has attached to his Response a properly signed and notarized affidavit, dated February 14, 2007, the same day that Plaintiff filed his Response to Defendant's Motion for Summary Judgment. The Court construes Plaintiff's Response to this Court's Order to show cause as a Motion to Substitute, and that Motion is due to be GRANTED. Defendant's Motion is due to be DENIED.

### B. *Motion for Summary Judgment*

Defendant contends that the apartment complex where Plaintiff lived is not a place of accommodation as defined by the ADA, and therefore is not subject to the ADA. With respect to Plaintiff's state law claims, Defendant asserts that Plaintiff assumed the risk or was contributorily negligent, and that the danger of the premises was an open and obvious

condition. Defendant also contends that its conduct was not wanton. The Court turns to Defendant's contentions regarding Plaintiff's ADA claims.

### 1. *Plaintiff's ADA Claims*

Defendant argues that Plaintiff's ADA claims must be dismissed because Title III of the ADA does not apply to apartment complexes. Title III of the ADA provides, in pertinent part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). It also provides:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce--
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor[.]

42 U.S.C. § 12181(7).

The Court agrees with Defendant that The Cedars is not covered by the ADA. Title III of the ADA does not apply to residential facilities.[1]  *See Indep. Housing Servs. of San*

---

[1] Plaintiff argues that *Independent Housing Services of San Francisco v. Fillmore Center Associates*, 840 F. Supp. 1328 (N.D. Cal. 1993), is distinguishable because the claim in that case was allowed to proceed under the ADA despite a finding that apartment complexes are not covered by the ADA. (Doc. # 16 at 2.) The court stated that the residential portions of the housing project at

*Francisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 n.14 (N.D. Cal. 1993) ("[T]he legislative history of the ADA clarifies that "other place of lodging" does not include residential facilities."); H.R. Rep. No. 101-485 (II), at 100 (1990) ("Only nonresidential facilities are covered by [Title III]."). Several courts have recognized that Title III does not apply to apartment complexes. *See, e.g.*, *Indep. Housing Servs.*, 840 F. Supp. at 1344 ("[A]partments and condominiums do not constitute public accommodations within the meaning of the [ADA]."); *Reid v. Zackenbaum*, No. 05-CV-1569, 2005 WL 1993394, at *4 (E.D.N.Y. August 17, 2005) (unpublished) (citing *Indep. Housing Servs.*, 840 F. Supp. 1328) ("A residential facility, such as an apartment, is not a public accommodation under the ADA.").

Plaintiff contends that the ADA applies to apartment complexes. He first argues that an apartment "is certainly an 'other place of lodging.'" (Doc. # 16 at 2.) Plaintiff's argument is defeated by operation of the textual canon of statutory construction *ejusdem generis*. "Under the doctrine of *ejusdem generis,* when an enumeration of specific things is followed by some more general word or phrase, then the general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 906 (11th Cir. 2003) (quotation marks

---

issue were not covered by the ADA because it does not apply to apartments. However, the court apparently allowed the suit to go forward because the project was "part of a program or activity of a government agency," *see Indep. Housing Servs.*, 840 F. Supp. at 1344, and "public entities may not discriminate in their programs and activities," *see id.* No such government involvement is at issue in this case.

omitted). Applying *ejusdem generis*, the Court concludes that the term "other place of lodging" does not include apartment complexes. That term refers to things of the same kind or species as an inn, hotel, or motel. These accommodations for transient guests clearly differ from apartment complexes, in which a resident's stay is more permanent. The term "other place of lodging" cannot be read to include apartment complexes. *Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 n.8 (3d Cir. 2006) ("[T]he legislative history of the ADA clarifies that the "other place of lodging" does not include residential facilities.").

Plaintiff also contends that the ADA applies to apartment complexes because the statute prohibits discrimination by any person who "leases (or leases to)" a place of public accommodation. He argues that this language is inconsistent with use of an inn or hotel but is consistent with the lease of an apartment.[2] The Court does not find Plaintiff's argument convincing. Plaintiff ignores the other terms in the statute besides "leases." Stated more fully, the statute prohibits discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation." *See* 42 U.S.C. § 12182(a). Therefore, the term "leases" does not necessarily apply to an "inn, hotel, motel, or other place of lodging;" the terms "owns" or "operates" may apply instead. Nor are such establishments the only ones that "leases" could have been intended to apply to; one might well lease one of the many

---

[2] Plaintiff argues as follows: "It is also instructive that the statute uses the term 'lease' with reference to the covered facilities. One does not say to the desk clerk of an inn or hotel 'I would like to lease a room for the night.'" (Doc. # 16 at 2.)

other locations listed in § 12181(7), such as an auditorium, convention center, or stadium. *See* 42 U.S.C. § 12181(7)(C), (D). It is simply not true, as Plaintiff's argument implies, that each of the actions in 42 U.S.C. § 12182(a) must apply to each of the locations in 42 U.S.C. § 12181(7). The inclusion of "leases" in the statute does not convince the Court that Congress intended to bring apartment complexes within the coverage of Title III of the ADA.

Plaintiff requests that the Court construe the Act "broadly and in accordance with its obvious terms." (Doc. # 16 at 2.) The Court certainly agrees that the ADA must be broadly construed. *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996). Such a construction, however, does not support the position Plaintiff asserts. Because The Cedars is not a place of public accommodation, and therefore not subject to the requirements of Title III of the ADA, Defendant's Motion is due to be GRANTED as to Plaintiff's ADA claim.

### *2. Plaintiff's Supplemental State Law Claims*

Defendant also seeks summary judgment on Plaintiff's state law claims. The Court need not address Defendant's arguments, however. The Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The Court has concluded that Defendant is entitled to summary judgment on Plaintiff's ADA claim, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, the state law claims will be dismissed without prejudice. *See Williams v. Town of White Hall*, 450 F. Supp. 2d 1300, 1310 (M.D. Ala. 2006) (Thompson, J.). Pursuant to 28 U.S.C. § 1367(d), the

applicable state law statute of limitations will be tolled 30 days for Plaintiff to file his state law claims in state court.

## V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

1.  Plaintiff's Response to Show Cause Order (Doc. # 22) construed as a Motion to Substitute is GRANTED.

2.  Defendant's Motion to Strike Affidavit (Doc. # 18) is DENIED.

3.  Defendant's Motion for Summary Judgment (Doc. # 12) is GRANTED with respect to Plaintiff's ADA claim, and DENIED as moot with respect to Plaintiff's state law claims.

4.  Plaintiff's ADA claim is DISMISSED WITH PREJUDICE.

5.  Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

6.  The pretrial and the trial scheduled in this matter are CANCELLED.

7.  This Court will enter a separate final judgment taxing costs.

DONE this the 16th day of April, 2007.

                                        /s/ Mark E. Fuller
                              CHIEF UNITED STATES DISTRICT JUDGE